CASE 108—ACTION BY ANN DILS AS EXECUTRIX OF COL. JOHN DILS
AGAINST W. J. WILLIAMSON TO ENFORCE SPECIFIC PERFORMANCE
OF A CONTRACT FOR SALE OF LAND.—FEB. 26.

# Williamson v. Dils.

APPEAL FROM PIKE CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANT APPEALS.   REVERSED.

SPECIFIC   PERFORMANCE—ENFORCEMENT   INVOLVING   HARDSHIP   AND
OPPRESSION.

Held:   1. A contract for the sale of an undivided interest in land
provided that the land was to be surveyed by the vendee at his
expense; that, when the amount thereof was ascertained, the
vendee should pay a certain price per acre for the vendor's un-
divided interest, and the vendor should make a quitclaim deed.
The vendee attempted to survey the land, but his surveyors were
prevented by force from doing so; the vendee being advised that
he would be in great danger of being killed if he went on the
premises.   Held:   That as the contract could not be performed
until the number of acres was ascertained by survey, and as this
could not be done without great hardship to the vendee, specific
performance would not be enforced.

HAGER & STEWART, ATTORNEYS FOR APPELLANT.   (W.   S.   HAR-
KINS AND R. T. DUKE, OF COUNSEL.)

## STATEMENT OF THE CASE.

This cause comes into this court on appeal from judgment de-
creeing specific execution of contract of 12 of December, 1891, be-
tween appellant and Colonel John Dils.   The contract, specific
execution of which was decreed in the judgment appealed from
(Rec. 670) is set out in petition filed July 2, 1895, by Colonel
John Dils, as plaintiff, against appellant as defendant.

As the record is quite voluminous, counsel feel impelled to
make a fuller statement of the issues and evidence than ordi-
narily pertains to a brief, deeming such course justified by the
size of the record and conducive to a readier understanding of
the case by the court.

The contract is set out in the petition (Rec. 6), and is for
sale of real estate in Pike county, "it being the one-third in-
terest in the Williamson-Dils and Joe Hall tract of land esti-

Williamson v. Dils.

mated to contain 18,000 acres, more or less, which land lies on the waters of Knox and Peter creeks and Tug river, in Pike county, Ky. This land is to be surveyed by party of the second part, and at his expense, and when the amount of said land is ascertained by survey, deducting the proper exclusions, then the party of the second part (Williamson) is to pay party of the first part two ($2) per acre for party of the first part's one-third interest in said lands. Said survey shall be completed by the first day of April, 1892, at which time the purchase money shall be paid by party of the second part, and deed of quitclaim free of dower shall be made by party of the first part; *but in the event that said survey is not at that date completed*, but is well under way, and the party of the second part makes to the party of the first part a good substantial payment on said purchase money, then party of the second part shall have a further reasonable time to complete said survey, at which time the balance of the purchase money shall be paid and deed made as above stated."

It was further therein provided that Williamson should have thirty days to purchase land at the price and upon the terms mentioned, if he should signify to Dils, or O. C. Bowles, whether or not he should take the land, and if decided to take the land, then the two thousand dollars mentioned as consideration for execution of the contract, evidenced by his note due and payable thirty days from that date, should be considered as part of the purchase price; otherwise should be forfeited; and further that Dils would carry out as to his one-third interest, agreement between the said parties for conveyance to John Hardin of part of the land theretofore sold by the parties.

PROPOSITIONS OF ARGUMENT AND CITATIONS OF AUTHORITY.

1. The sale was by the acre, and the area to be ascertained by survey. Guess work or surmise can not afford basis of certain recovery, or justify departure from the standard measure of the contract.

2. Specific execution of contracts in equity is matter not of absolute right in either party, but of sound and reasonable discretion of the court, and will never be adjudged unless equitable so to do. Cocanougher v. Greene, 93 Ky., 519; Woollums v. Horsley, Ibid, 582; Patterson v. Bloomer, 95 Am. Dec., 218; Stokes v. Stokes, 155 N. Y., 571; 2 Story, 750A.

The required element of certainty in specific execution of contract is lacking.

3. The decree is not supported, because by it the vendee does not receive the title he contracted for. Fry Spec. Perf., 427; Pomeroy, 454, 203, 229, 231.

The conditions supervening the date of contract and the attempt to make the survey, conceding they were not brought about by. act or omission of the parties, present a case of mistake of matter affecting the subject matter of the contract, and defeat; its specific execution. Pomeroy, 229, 231, 268, 371.

4. The court will not specifically execute contract, and will give affirmative relief by rescission under the state of title disclosed by the record. Williams, &c. v. Carter, 3 Dana, 76; Beckwith v. Kouns, 6 B. M., 222; Hightower v. Smith, 5 J. J. M., 542; Maupin on Marketable Land Titles, 284-290; Gans v. Renshaw, 2 Pa. St., 34; 44 Am. Dec., 152.

JAMES GOBLE AND RATCLIFF & RATCLIFF, FOR APPELLEE.

1. THE HOSTILITY SHOWN TO APPELLANT'S TITLE.

The substance of this defense is, that because of hostility and threats of violence from others to appellant and those in his employ, he abandoned the work of surveying, failed to comply with the obligation he assumed to ascertain the number of acres sold at his expense; and on this default of himself, for which appellee never was responsible, he asks the court to rescind the contract, pay him back the $2,000, and relieve him from all its obligations. There is no charge that appellee is responsible for any part of the opposition he has encountered in his feeble effort to have the land surveyed. To admit that he is excusable because of the violent threats complained of, even if they did go to the extent of endangering life; would be to acknowledge the inability of the law and government, which has the power of the people behind it, to protect a citizen in the enjoyment of his property and life, against the acts of a few violent men, who would use force rather than the law and the machinery it has provided. Courts can not confess any such weakness or want of power in the law. It is amply able to protect the life and property of all citizens from the violent acts of others. For this purpose the government has at its command the entire military and civil power; and when appealed to will exhaust its whole force before permitting either loss of life or property. When all the resources of government are brought into action, and the violence is so strong it is unable to overcome it, a dissolution of government follows, and anarchy and violence reigns.

If the threatened violence was such as to endanger life, or to prevent the peaceful execution of the contract, appellant can not justify the course he has adopted, and make his failure the basis and groundwork of an action for a rescission of it against the other party who is not to any extent in fault. When he found the violence and opposition too great to be overcome by peaceful and persuasive means, if he did so find it he should

Williamson v. Dils.

have appealed to the law, which could and would have protected him, the men in his employ, and the property from all danger.

To grant the rescission asked on the ground alleged would be equivalent to saying the law has no power to protect the life or property of a citizen against the violent and unlawful acts of a few, which would render courts useless and governments powerless

Appellant well knew the nature and character of opposition with which he would be confronted. He was not deceived, misled, or lulled into any feeling of security respecting the title to the property that was not real. He contracted to take the expense and burden of surveying the land on himself; and when he asks the court to excuse him from this obligation because of threatened violence from some half dozen men, it is no answer to appellee's response that the law is able to protect him, to say he is not required to call to his aid such extraordinary remedies. What is there so extraordinary about the plain simple process of the law that appellant could not resort to it? What other means or power could he have of guarding himself and property from violence and wrong?

When he met with the opposition complained of, if he did meet with it, to call to his aid the power of the law was his only remedy. Had he selected some other means of enforcing his rights, and suppressing the opposition, it would have been an extraordinary remedy in the extreme.

The court, or the clerk, if no court in session, would have granted him orders of survey at any time while the action was pending to the surveyor of Pike county, whose duty it would have been to execute them; and any unlawful interference to prevent their execution would have been a contempt of court; and the wrongdoer could have been put under bond sufficient to restrain him, or incarcerated in jail. Such a course would not have been quite so extraordinary, as the means used by appellant to get rid of the contract by refusing to perform the obligation he assumed without legal excuse, then making that refusal the groundwork for a rescission. If sending out a single surveyor clothed with the power of the law to do the work would have extended it through too long a period, then every one in the employment of appellant could have been made a special surveyor and armed with the same power.

At first blush, on reading the testimony in regard to the violence charged, it appears to have been considerable; but when it is critically examined, the small number engaged in it considered, together with the depositions of those who were honored with the title of leadership in opposition, we are constrained to

believe it was more a pretext to get rid of the bargain than anything else.

We feel justified in saying there is more noise than substance in the charge of violence, alleged as an excuse for not surveying the land. Appellant seeks to magnify the opposition and make it look formidable by having each witness to state what the same party said, when the truth is, there were not more than two men proved to do anything—Blankenship and Hurley—and they both testify that the charges against them are false.

2. THE CLAIM FOR RESCISSION CONSIDERED.

Before the court will decree a rescission it must appear the complaining party will be subjected to some loss, hardship, or inequitable result growing out of the contract he did not know, or which a reasonably prudent man would not have been expected to know at the time of making it. If all the circumstances and conditions surrounding and connected with it, or the subject-matter of it, are known to him, and he enters into it with his eyes fully open to all the facts, and to the whole truth, the other party not being to any extent in fault, he can not have a rescission because he has become dissatisfied with his bargain.

A rescission is a cancellation or annulment of the contract, which must be promptly sought. The most essential prerequisite is the party seeking it must show his ability to return to the other all he received by it. Each party must be given back all he parted with by it. They must be placed in *statu quo*, which means both after the rescission must occupy the same relation to the subject-matter of it they did before it was made. If one parted with his right to a specific thing, the thing must be restored. If it was for the sale of land the land must be given back. This proposition is so self-evident that authority to support it is hardly necessary, but Chaplain v. Burton, 2 J. J. M., 216; Clark v. Finnell, 16 B. M., 338; Lacy v. McMillian, 9 B. M., 525; Miller v. Johnson, 9 Dana, 48, and Black v. Oldham, 4 Dana, 196, and many others which could be cited, are in point.

The title to the thing given back must be as good and valuable when it is returned as when parted with by the contract.

Can appellant place his vendor in *statu quo?* It is manifest from his own showing he can not, for he has already sold the land to another.

3. THE RIGHT TO A SPECIFIC PERFORMANCE CONSIDERED.

This is called an action for the specific performance of a contract. While this is in a measure true, it partakes no more strongly of the nature of such an action than any other pro-

ceeding by a vendor against his vendee to enforce a lien on the property for the purchase price. The rule that such remedies are never granted as a matter of right, but rest on the sound discretion of the court does not apply to a case like this. This statute giving the vendor a lien for the purchase price would be of no value if the enforcement of it was left alone to the discretion of the court. If appellant has failed to show a right to a rescission, he has failed to show why a specific performance should not be had.

If appellant knew exactly the kind of title his vendor had, the difficulties that existed and surrounded it, the opposition he would encounter from those who were unfriendly to his claim; and with a full knowledge of all these facts agreed to accept the title as it was, without warranty, and by a quitclaim deed, he took it at his own risk, and must now be contented with the thing he bought, and pay the price he agreed to pay.

## AUTHORITIES CITED IN THIS BRIEF.

McMillan's Heirs v. Hucheson, &c., 4 Bush, 611; Terry v. Johnson, 86 Ky., 95; Russell v. Doyle, &c., 84 Ky., 386; Chaplain v. Burton, 2 J. J. M., 216; Clark v. Finnell, 16 B. M., 338; Lacy v. McMillian, 9 B. M., 525; Miller v. Johnson, 9 Dana, 48; Black v. Oldham, 4 Dana, 196; Lyones v. Osborn, 7 B. M., 305; Harper v. C. N. O. & T. P. R. Co., 15 R., 225; Rawlins v. Timberlake, 6 Mon., 230; Cummins v. Boyle, 1 J. J. M., 480; Camren v. Bell, 2 Dana, 328; Pom. on Con. Spe. Perf., sec. 346; Fry on Spe. Perf., sec. 857; Sugden on Ven., by J. C. Perkins, p. 505; Devlin on Deeds, vol. 1, sec. 27; Davis v. Bowland, 2 J. J. M., 27; Shackelford v. Wright, 13 R., 62.

OPINION OF THE COURT BY JUDGE PAYNTER.—REVERSING.

On December 12, 1891, the appellant, Williamson, and Col. John Dils entered into a contract by which the appellee sold to appellant an undivided one-third interest in what is known as the "Williamson-Dils Survey," in Pike county, Ky., supposed to contain within its exterior boundaries some thirty-odd thousand acres. So much of the contract as is necessary for the consideration of this case reads as follows: "It being the one-third interest in the Williamson-Dils and Joe Hall tract of land, estimated to contain 18,000 acres, more or less, which land lies on the waters

of Knox and Peter creeks and Tug river, in Pike county, Ky. This land is to be surveyed by party of the second part, and at his expense, and when the amount of said land is ascertained by survey, deducting the proper exclusions, then the party of the second part (Williamson) is to pay party of the first part two ($2) dollars per acre for party of the first part's one-third interest in said lands. Said survey shall be completed by the first day of April, 1892, at which time the purchase money shall be paid by party of the second part, and deed of quitclaim, free of dower, shall be made by party of the first part; but in the event that said survey is not at that date completed, but is well under way, and the party of the second part makes to the party of the first part a good, substantial payment on said purchase money, then the party of the second part shall have a further reasonable time to complete said survey, at which time the balance of the purchase money shall be paid and deed made as above stated." It will be observed that the parties estimated that Dils had a one-third interest in 18,000 acres of land, more or less. It was a sale by the acre, and the contract price was $2 per acre. The parties understood that all "proper exclusions" should be deducted. It was contemplated that, in order to ascertain the number of acres in which Dils had an interest, a survey was necessary, which was to be made at the expense of the appellant. It was to be completed by April 1, 1892, but, if not done, then, upon a good, substantial payment on the purchase money, further reasonable time to complete the contract was to be given the appellant. After the quantity of land was ascertained for which Williamson was to pay, Dils was to make him a quitclaim deed. Before and after April 1, 1892, Williamson had two or three corps of surveyors in the field, with a view of complying with his contract, but being unable

to complete it in March, 1892, he gave Dils notice that it could not be done, and made what he regarded as a substantial payment on the purchase money. The survey was never completed. Dils instituted this suit for specific performance of the contract, and prayed that a survey might be made at the expense of the appellant, to ascertain the number of acres for which he agreed to pay. Among other things, it was averred in the answer that at the date of the contract it was not known by either Williamson or Dils to what extent the lands embraced in the Dils-Williamson patent had been entered, surveyed, and patented prior to the 24th day of June, 1872, the date of the Williamson-Dils patent; that no survey of the land excepted from the grant had ever been made before or after that patent had been issued, and for this reason the provision was inserted in the contract for the ascertainment of the number of acres for which Williamson should pay; and that the sale and purchase would depend upon such survey. It is also averred in the answer that appellant undertook by means of his surveying parties to prosecute the work with diligence, to ascertain the number of acres for which he should pay; that, without fault or procurement upon his part, persons residing within the exterior lines of the patent, in actual possession, and claiming a title thereto adversely to the Williamson-Dils title, were hostile and threatening, and by threats and hostile demonstrations by force and with arms alarmed, intimidated, and drove the surveying parties from the land; that that condition prevailed until the answer was filed in this action; and that, by reason of such threats and demonstrations by the residents in possession, it was impossible to secure a survey of the land, to ascertain the acreage in which Dils had an interest, and for which appellant was to pay under the terms of the contract. It is

further averred in the answer that more than half of the land was covered by prior surveys, and that about 7,000 acres of it were held under junior patents, under which the patentees had taken possession, and were then claiming the land. There were other averments in the answer, which are not necessary to be stated here.

The testimony offered by the appellant conduces to prove that he undertook, in good faith, to have the survey made; that he prosecuted it with reasonable diligence; that he was engaged for a period of about six months in his efforts to make a survey of the land as contemplated by the contract; that the parties living within the boundaries were hostile to his claim, and by threats and intimidation prevented the surveyors from completing the work; and that these threats and demonstrations of force compelled his surveying parties to quit the work, and for that reason did not complete it. Under such circumstances, should the court decree a specific performance of the contract? It is a rule in equity that specific executions of contracts is not a matter of absolute right in either party, but upon the reasonable discretion of the court, and, unless it is equitable to do so, courts will not adjudge it. Cocanougher v. Green, 93 Ky., 519, 14 R., 507, 20 S. W., 542; Woollums v. Horsley, 93 Ky., 582, 14 R., 642; 20 S. W., 781. It is evident that the parties to this contract did not contemplate that such an obstacle would confront appellant in making the survey as did when he attempted to make it. Had the parties known that it would probably result in loss of life or bloodshed to ascertain the number of acres which the appellant purchased from Dils, it is certain that they would never have entered into the contract; hence we say that neither of the parties had in contemplation such a condition of affairs as arose. The appellant was advised by his friends not to go upon the land, as he

Williamson v. Dils.

would be in great danger of losing his life if he did so. He was not required to make such a sacrifice to carry out the undertaking which he had assumed. Neither could he be held responsible because his undertaking was rendered impossible by reason of a threatened danger to those to whom he was compelled to look for the execution of the work. But the plaintiff evidently realized the situation, because in his petition he asked that the land be surveyed at the expense of the appellant, but he seems never to have moved the court to comply with the prayer of his petition by making an order of survey in the case. The appellant did not do it, because his surveying parties had spent almost six months in the field, and had failed to accomplish it. It is suggested that the court could have made an order of survey, and called upon the officers of the law to protect the surveying parties. Neither side seemed to be willing to venture such an effort, as no motion was made for an order of survey. When the appellant did not accomplish it in the effort which he made, we are of the opinion that he did all which good faith required him to do to comply with the provisions of the contract, which obligated him to make a survey of the land at his expense. Specific performance will not be decreed if the contract and situation of the parties be such that the remedy of specific performance will be harsh or oppressive. Pomeroy, Equity Jurisprudence, section 1405. In explanation of this doctrine in note 2 to that section it is said: "This rule generally operates in favor of defendant, but may be invoked by a plaintiff when defendant demands the remedy by counterclaim or cross-complaint. The oppression or hardship may result from unconscionable provisions of the contract itself, or it may result from the situation of the parties. unconnected with the terms of the contract, or with the circumstances of its negotiation and execution;

that is, from external facts or events or circumstances which control or affect the situation of the defendant." The resistance made by occupying claimants to a survey of the land is a circumstance which so affects the appellant that he could not perform that part of the contract which required him to have the land surveyed. If he could not do so in the usual and peaceable way, the court should not decree that he should have done so.

It is urged by counsel for appellee that, as Dils was only required to make a quitclaim deed to Williamson for his interest in the land, therefore he was compelled to accept whatever title Dils had. The parties agreed that the actual number of acres in which Dils had an interest should be ascertained before Williamson was required to pay for the land or accept any kind of a deed. As we have said, the sale was by the acre, and the appellant encountered the same difficulty in the execution of the survey as he would have encountered had the contract required Dils to make a deed with covenants of general warranty. From our view of the case, the character of the deed to be made has nothing to do with it. While Williamson was to accept a quitclaim deed, Dils was never in a condition to tender it to him until the number of acres for which he was required to pay had been ascertained. It would be harsh and oppressive to decree specific performance under the circumstances of this case. The court below decreed specific performance, but, in order to do so, was compelled to practically guess at the quantity of land for which the appellant should pay. The contract of the parties did not contemplate that a court should be required to do that, in order to ascertain the number of acres for which the appellant should pay the vendor. We are of the opinion that the contract should be

rescinded, and the money which Williamson has paid on the purchase money should be restored to him, but not to draw interest until the mandate is filed below.

Judgment is reversed for proceedings consistent with this opinion.

Petition for rehearing by appellee overruled.