## Bluegrass Realty Company v. Shelton, et al.

(Decided May 31, 1912.)

### Appeal from Logan Circuit Court.

1. Specific Performance—Decree for Does Not Go as Matter of Course—Contracts.—A decree for the specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand in view of all the circumstances in the case.

2. Specific Performance.—Courts of equity will not interfere to decree a specific performance except in cases where it would be strictly equitable to make such a decree.

3. Specific Performance—Title Bond—Deed with Reservation Not Contained in Bond.—In an action to enforce the specific performance of a contract to purchase a tract of land where the transaction was conducted by agents of the buyer and seller, the title bond executed containing no reservation of an acre of ground where a burial ground was situated, and the agents conducting the transaction knowing nothing about the reservation, the declination of the purchaser to take the land with the reservation of the acre in the deed was justifiable, and it would be unjust to enforce a specific performance of the contract in view of the purposes for which the land was bought and the position of the part reserved in the deed.

PENDLETON, BUSH & BUSH, S. R. CREWDSON and S. T. DAVIS for appellant.

BROWDER & BROWDER for appellee.

OPINION OF THE COURT BY JUDGE WINN—Reversing.

By title bond of date March 18, 1911, the appellees, William and E. C. Shelton, sold, at $225 an acre, to the appellant, Bluegrass Realty Company, a tract of some 70 odd acres of land adjacent to the city of Russellville, Logan County. In the negotiations leading up to the closing of the transaction the Sheltons were represented by one Hutchings, a real estate man, and the realty company was represented by a couple of gentlemen who had come from Winchester, Kentucky, its home office, down to Russellville to negotiate this trade. These realty company representatives and the Sheltons did not see each other in person. When the trade was closed the title bond was prepared, executed by the Sheltons and delivered to the realty company representatives, who gave that company's check for $200 in the

nature of a binder. It was arranged that the land should be surveyed, deed prepared and draft drawn for the cash payment, with the papers attached, on the realty company at Winchester. The arrangement was followed out, but the realty company declined to pay the draft or accept the deed. The Sheltons thereupon brought this action in the Logan Circuit Court for a specific performance. Upon submission, the chancellor awarded the relief, and the realty company appeals.

Many issues are made in the record, which have been elaborately briefed, but we are of opinion that a single issue is decisive of the case. The realty company was buying the land for the purpose of subdividing it into streets and town lots, as a subdivision of the town of Russellville. It lay in an angle formed by a junction of two railroads crossing at Russellville, and just opposite a point where a new union station was to be built. When the deed reached Winchester it was found to except from the boundary one acre of ground reserved as a family burial ground for former owners of the land. This burial ground was but a little ways distant from the location of the new station. No reservation of the burial ground was mentioned in the title bond. Hutchings, the real estate man, testifies that he and the realty company representatives drove over the ground, and that when at a distance of about 150 yards from the burial ground one of the representatives asked: "What is this down here?" and that he, the real estate man replied that it was an old graveyard of an acre and a half; and that nothing further was said about it. The real estate man does not claim that he made any statement that it was to be reserved, or that the realty company men understood that it was to be reserved. Upon the other hand, both of them deny any knowledge of the existence of the graveyard, or that anything whatsoever was said about it. If it be conceded that the conversation detailed by the real estate man transpired, it goes no further than to show that the realty company had knowledge of a burial ground there, without any knowledge or contract understanding that it was to be reserved. The question presented, therefore, is whether, when the realty company had contracted for this plot of ground for subdivision into streets and lots, without any reservation of the graveyard, it would be equitable and proper to require the company to accept the tract of land with the graveyard reserved. A decree for the

specific performance of a contract for the sale of real estate does not go as a matter of course, but is granted or withheld according as equity and justice seem to demand in view of all the circumstances in the case. In Story's Equity, section 750, the author says: "Indeed, the proposition may be more generally stated that courts of equity will not interfere to decree a specific performance except in cases where it would be strictly equitable to make such a decree." In Woolums v. Horsely, 93 Ky., 582, it was said that a specific execution was not a matter of absolute right in a party, but of sound discretion of the court; that a hard or unconscionable bargain would not be specifically enforced, nor if the decree would produce injustice or under the circumstances be inequitable; that a court of equity would allow a defendant to resist a decree where the plaintiff might not be allowed relief upon the same evidence; and that a contract ought not to be carried into a specific performance unless it should be just and fair in all respects. The same rule is announced in Ratterman v. Campbell, 26 Ky. L. R., 173, s. c., 80 S. W., 1155; Jones v. Prewitt, 128 Ky., 496; and Cocanougher v. Green, 93 Ky., 519. It is unnecessary further to elaborate this doctrine in order to make clear the court's view upon the equitable principle involved.

Coming now to an application of these principles to the specific case at bar, it is to be determined whether, under the facts stated, a specific performance of the contract sued on is just and fair to the realty company. It seems clear to us that it is not. It is a matter of common knowledge that dwelling properties in the vicinity of burial grounds are not desirable nor salable. Whether it be some degree of superstition inhering in mankind, or whether it be that the proximity of a burial ground will awake unhappy memories in the minds of all of us, the fact exists that humanity at large is unwilling to seek its dwelling place in the vicinity of these resting places of the dead. Upon its material side, such an antipathy is bound to depreciate salable values. It cannot be argued that this property, with the graveyard in it for all future years, could have the same merchantable value that it would possess without it. It reasonably will be assumed that those whose dead are buried there, even though they are scattered to the far corners of the world, would not part with their title to this ground.

The representatives of the realty company testified that at once when they saw in the deed the reservation of the burial ground, all further steps in the matter were stopped. In our judgment, the declination of the realty company to take the land with this reservation was justifiable; and it is our further judgment that it would be unjust to enforce a specific performance of the contract.

Many other questions are presented in the record, which it is unnecessary to discuss. The realty company took the position that at best the document executed was not a title bond or sale, but was a mere option, to be accepted or rejected at Winchester when its representatives had returned there. It is unnecessary for us to determine this question, though it is not improper to remark that in our judgment the transaction at Russellville, as evidenced by the title bond, was a closed and definite transaction, not subject to approval or disapproval; and were it not for the presence of the graveyard within the boundary we would have little difficulty in upholding the decree of the chancellor. It is argued, however, that the realty company could not deny the purchase and at the same time decline to perform because of the existence of the burial ground. The positions are not inconsistent. The company can, with entire propriety, say that it did not buy the ground; but that if it be held to have done so, it could not be forced to take it because of the existence of a reservation not made in the title bond upon which the action was founded.

The realty company answered in May. The proof was then taken. At the September term an amended answer was tendered, setting out that it would be inequitable to enforce a performance because of the presence of the excepted graveyard. The court refused to permit this answer to be filed, although proper showing was made excusing the failure to plead this specific defense in the original answer. But be that as it may, the proof was in the record disclosing a sound and sufficient reason why the specific performance should be refused. The deed tendered with the reservation in it did not conform to the title bond. Had the realty company sought to compel a conveyance by the Sheltons of the land described in the title bond, they would perforce have answered that they could not convey to the extent of the

graveyard. How then are they in position to ask an enforced performance from the other side at the hands of a court of equity?

The judgment of the trial court is reversed, with directions to dismiss the petition.