## Darnell, et al. v. Alexander.

(Decided December 18, 1917.)

### Appeal from Caldwell Circuit Court.

1. Specific Performance—Discretion.—The remedy of specific performance is not one which will be granted as a matter of right, but is always subject to the exercise of a sound judicial discretion according to the principles of equity, and where the facts and circumstances are such that to grant specific performance would result in hardship and oppression and the contract is unfair and unconscionable, the remedy will be withheld and the complaining party relegated to his remedy at law.

2. Specific Performance—Inadequacy of Price.—While inadequacy of price alone will not be sufficient to refuse a decree for specific performance, this fact, coupled with other circumstances showing the unfairness of the contract, will be sufficient to authorize the court to refuse the relief.

S. D. HODGE for appellants.

R. W. LISANBY and C. M. LISANBY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This is a suit brought by appellee (plaintiff below) against appellants (defendants below), who are husband and wife, seeking a specific performance of a written contract reading:

"This contract made and entered into this March 23, 1915, by and between Van Alexander and his wife, Lottie Darnell, parties of the first part, and J. B. Alexander, party of the second part, witnesseth, that the party of the first part has this day entered into contract with the party of the second part that they will make him a general warrantee deed to a tract of land in Caldwell county, Ky., known as the old Wolf farm, and is the same farm that we are now living on, on the following conditions: That the said J. B. Alexander is to assume the payment of two notes against the said farm which is now in the Bank of Dawson, and he is to have the Bank of Dawson release the said two notes amounting to $1,474.00, then they will make him the deed when he presents notice from the Bank of Dawson that we are relieved of the payment of the two notes. Witness our hands this March 23, 1915.

"M. V. DARNELL.
"CHARLOTTIE DARNELL.

"Attest: J. V. DARNELL."

The answer resisted the relief sought upon the grounds that defendants did not intend nor did they by executing the contract obligate themselves to sell their farm consisting of 200 acres in Caldwell county to the plaintiff, and that the execution of the contract was procured by fraudulent misrepresentations made to defendants by plaintiff whereby they were induced to sign it, and that it would be unconscionable and inequitable under the facts set out in the answer to enter a decree for specific performance. Other matters of less importance and which, under the conclusion we have reached, do not affect the case, were relied upon.

Appropriate pleadings put in issue the allegations of the answer, and upon trial the court sustained the prayer of the petition and adjudged that defendants be required to specifically perform the contract by executing a deed to the plaintiff within a time specified, but if they should fail to do so the master commissioner of the court was ordered and directed to execute the deed for and on behalf of the defendants. Complaining of that judgment, they prosecute this appeal.

While on some minor points there is a slight conflict in the testimony, the record as a whole shows the facts to be substantially these: The land was purchased by defendant, M. V. Darnell, some time about the year 1909 or 1910 from the owners, C. V. Hayes and B. D. Menser, at an agreed price of $1,700.00. No deed was made at that time, but defendants took possession of the farm and moved upon it and improved it considerably by clearing new ground and cleaning up old ground, in all about eighty acres, building a new tobacco barn something like 34 feet square and capable of housing 8 acres of tobacco, building a considerable amount of new fencing and repairing other fencing, putting a new roof on the dwelling, which was a brick one containing about eight rooms with 18-inch walls, and perhaps other improvements. The unpaid consideration with interest on February 6, 1913, amounted to $1,294.08. On that day the vendors executed a deed for the land to defendant, M. V. Darnell, and he executed a note to each of them payable one year afterward for the sum of $647.04, being their respective portions of the unpaid consideration. These notes were not paid at maturity, the payees indulging the maker, and some time after they became due Menser died; his administrator, who was the other vendor, Hayes, was compelled to collect at least the Menser note, of which

fact the defendant was aware, and he began efforts to procure the money with which to meet his obligation.

The plaintiff, Alexander, is a nephew of the defendant, Mrs. Charlottie Darnell, and had recently come into possession of a considerable inheritance from his father, who had died. She suggested to her husband that perhaps her nephew could and would come to their rescue by either assisting them to procure the money or himself furnishing it, and thus relieve them of their present embarrassment. He was seen by the husband and expressed a willingness to do what he could, although stating at the time that he was not then prepared to take up the notes. Upon a second communication with him he agreed to do so, the notes at that time being in a bank at Dawson, as was supposed. Plaintiff notified the defendants that he would call at their home to see further about the matter, which he did on the evening of the day the contract was executed. He stated to them that he had gone to the bank at Dawson for the purpose of taking up the notes and that the bank would not deliver them to him without some writing, in the nature of a title bond, showing a contract between him and the makers of the notes evidencing his authority to make payment; that he had prepared such a contract, which he exhibited to defendants, and M. V. Darnell signed it, but his wife procured her daughter to sign her name to it. These facts are testified to by defendants and three other witnesses, and each of them further says that after the contract was signed and delivered to plaintiff he left, saying: "Uncle Van, you and Aunt Lottie rest easy, I will pay it in the morning. All I want is the interest." "Uncle Van," who is the defendant, M. V. Darnell, asked him if he charged anything for coming to defendant's home, when he said, "Nothing; I don't charge anything."

At the time the contract was signed the administrator of Menser had filed suit to collect the Menser note, and this had very much distressed defendants, especially M. V. Darnell. After the contract was entered into plaintiff paid the indebtedness, including the balance due on the Menser note and the cost of the suit brought upon it, and matters went along that way until some time in Februtry, 1916, when defendants concluded that one year's interest was about due and asked plaintiff to come down and look at some stock with the view of selling it to him to satisfy the interest, and if the price were more than that to place the excess as a credit upon the indebtedness.

He went and looked at the stock, but no trade was made, and for the first time he informed the defendants that his contract was one of purchase of the farm, and that he intended to insist that he be given a deed. This was refused, resulting in the suit.

It is true that plaintiff denies the testimony of the five witnesses as to what occurred at the time the contract was signed, but he is overwhelmed with a great preponderance of testimony upon this point, and, also, as we shall see, by other facts and circumstances in the case. Defendant M. V. Darnell and his son testify that the farm in its improved condition was easily worth $3,000.00 at the time. No witness except plaintiff places the price at less than $2,000.00, while others say that it was worth between $2,500.00 and $3,000.00. Plaintiff himself says that it was worth $1,700.00. We have seen that defendant, M. V. Darnell, paid $1,700.00 for it and improved it many hundreds of dollars, and we know from the history of the country that prices of land considerably increased from the time defendants purchased the farm until the contract sought to be enforced was executed. We attach but little weight to the fact that defendant, M. V. Darnell, after he was sued offered to take $1,500.00 for the land. It was his first suit and he was disturbed and thought that it spelled his ruin. He first demanded much more than that sum, but the persons spoken to did not have the cash which it was necessary for defendant to obtain in order to settle and stop the suit.

We see then that the respective contentions of the parties are that defendants insist that the transaction was nothing but a borrowing by them from the plaintiff the money with which to discharge the balance due on the purchase price of the land, for which they agreed to pay eight per cent. interest; while plaintiff insists that he purchased the land in consideration of the payment of the balance of the unpaid purchase money. When we take into consideration the overwhelming weight of the testimony against plaintiff, the manifest inadequacy of the price he paid under the terms of the contract, and the improbability of defendants agreeing to dispose of their home for nothing more than the balance of the purchase price due on it, which was no more than could have been collected through the final prosecution of the suit to recover that price, we are constrained to hold that defendants' theory of the transaction is the correct one. This being true, what are the rights of the parties?

No rule of equity is more deeply rooted in the law than the one that a specific performance of a contract is not granted as a matter of right, but it is always addressed to the sound and reasonable discretion of the court to be exercised according to the circumstances of each case. This discretion, however, is not an arbitrary or capricious one, but is a sound judicial discretion to be exercised according to the principles of equity. 36 Cyc. 548-9; Pomeroy's Equity Jurisprudence, sec. 1405; 2 Story's Equity, sec. 769 and 742; Bowman v. Irons, 2 Bibb. 78; Petty v. Roberts, 7 Bush 410; Cocanougher v. Green, 93 Ky. 519; Woolums v. Horseley, *idem.* 582; Williamson v. Dils, 114 Ky. 962, and Heydrick v. Dickey, 155 Ky. 222.

This court in the Cocanougher case said upon this subject: "Specific execution of a contract in equity is a matter not of absolute right in either party, but of sound and reasonable discretion in the court, and will never be adjudged except it is strictly equitable to do so. Story's Eq., sec. 742."

In the Woolums case, discussing the same subject, it is said: "There is a distinction between the case of a plaintiff asking a specific performance of a contract in equity, and that of a defendant resisting such a performance. Its specific execution is not a matter of absolute right in the party, but of sound discretion in the court. It requires less strength of case on the side of the defendant to resist the bill than it does upon the part of the plaintiff to enforce it. . . . Thus a hard or unconscionable bargain will not be specifically enforced, nor, if the decree will produce injury or under all the circumstances be inequitable will it be rendered. In other words, a court of equity will not exercise its power in this direction to enforce a claim which is not, under all the circumstances, just as between the parties. . . . A contract ought not to be carried into specific performance unless it be just and fair in all respects."

Again, in the Williamson case, *supra*, it is said: "Specific performance will not be decreed if the contract and situation of the parties be such that the remedy of specific performance will be harsh or oppressive." In defining what constitutes such oppression or harshness the court quotes with approval from the notes to the text of Pomeroy, *supra,* thus: "The oppression or hardship may result from unconscionable provisions of the contract itself, or it may result from the situation of the parties, unconnected with the terms of the contract, or

with the circumstances of its negotiation and execution; that is, from external facts or events or circumstances which control or effect the situation of the defendant.''

Precedents also exist to the effect that circumstances of an inequitable nature, oppression and hardship on the one side, with pecuniary embarrassment upon the other, will be sufficient to create a presumption of fraud which the party seeking specific performance must overcome in order to obtain that relief. Burke v. Taylor, 94 Ala. 530; Tracey v. Sackett, 1 Ohio State, 54.

In the earlier English cases inadequacy of consideration alone was a sufficient defense to a proceeding for this relief, and it is yet the rule in a number of states, some of them going to the extent of adopting the rule by statutory enactment. 36 Cyc., pages 610, 611. We are not called upon in this case, however, to go to that extent, and indeed that is not the rule in this jurisdiction, but when the inadequacy of price is reinforced by other facts showing the contract to be harsh and oppressive, it has been the unbroken policy of this court to refuse a specific execution.

The defendants here were pecuniarily distressed; they were dealing with their nephew, who, according to the great preponderance of the testimony, as we have seen, procured their signatures to the contract under the belief on their part that it was necessary in order for him to accommodate them as he had agreed to do. To enforce this contract would not only be endorsing that character of conduct, but would result in taking away from defendants practically all of their earthly belongings, and that, too, for a greatly inadequate consideration. To our minds this is a case peculiarly demanding that the court's discretion should be exercised against specifically enforcing the contract.

Plaintiff's pleadings were so drawn that if specific performance were refused he could be given the alternative relief of recovering the amount of money he had paid under the contract and to obtain a lien upon the land for its satisfaction with an order to sell the land for that purpose. No time having been fixed when the amount of money which plaintiff paid should become due, it would become payable upon demand, and we think the actions of the plaintiff in this case may be treated as a demand, and he therefore should have been given judgment for the amount which he paid, with interest, and a lien upon the land, followed by an order of sale. This is clearly the only relief to which the record shows him entitled.

Wherefore, the judgment is reversed, with directions to ascertain' the amount of money due plaintiff, and to give him judgment in accordance with the directions herein contained.