## Lexington & Eastern Railway Company v. Williams and Wife.

(Decided February 21, 1919.)

### Appeal from Letcher Circuit Court.

1. Specific Performance—Nature and Grounds of Remedy in General. —The remedy of specific performance is not one which will be granted as a matter of right, but will be granted or withheld by the court in the exercise of a sound judicial discretion, which, however, is not an arbitrary or capricious one, but is one to be exercised according to the principles of equity, and when to enforce it would operate harshly and oppressively upon the defendant and in a way not reasonably contemplated when the contract was entered into, the relief will be withheld and the complaining party relegated to his remedy at law.

2. Specific Performance—When Will be Denied.—Although such harsh, oppressive and unconscious results would follow a specific execution but not to the extent to authorize its denial under above rule if the contract, strictly construed, does not include or provide for the specific relief sought, it will be denied.

3. Specific Performance—When Will be Denied.—A contract provided for the sale of a right of way through vendee's farm, through which ran a natural stream, and in which, running longitudinally, the railroad company selected its right of way. The contract provided for a price for "hill" land and another for "bottom" land. Held, that neither descriptive term applied to the bed of the stream, and the specific performance sought to compel the execution of a deed to that portion of the vendee's farm in the bed of the stream will be denied.

MORGAN & HOWE, LOUIS A. NUCKOLS, D. I. DAY, BENJAMIN D. WARFIELD for appellant.

DAVID HAYS, E. E. HOGG and W. G. DEARING for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellees and defendants below, Hiram Williams and wife, are the joint owners of a small farm in Letcher county, Kentucky, through which runs the North Fork of the Kentucky river. On August 31, 1910, the husband entered into a written contract agreeing to convey to the appellant and plaintiff below a right of way through the farm should the railroad company conclude to use it in the extension of its road east from Jackson, Kentucky. The agreed consideration was ten dollars per acre for all hill land taken, and fifty dollars per acre for all bottom land taken, five dollars being paid at the time, and the company had until December 31 following the date of the contract in which to select the right of way and to demand a conveyance thereof. The consideration agreed to be paid was not only for the land to be taken, but also "to be in lieu of all claims for damages." It was further stipulated that if the site of defendant's dwelling should be selected as a part of the right of way, they should receive an additional sum of $2,100.00. In describing the farm it is stated in the contract that it is "situated in Letcher county, Kentucky, on both sides of the North Fork of the Kentucky river." Mrs. Williams declined to sign or acknowledge the contract and at once repudiated it. Before December 31, following the execution of the contract, a survey was made and a description of the

right of way prepared, which, according to plaintiff, contained 1.37 of an acre.  Demand was made of defendant, Hiram Williams, for the execution of a deed for the right of way as located, accompanied by a tender of the balance of the money due, estimated at the sum agreed to be paid for hill land, which balance was nine dollars. Defendants declined to accept the tender and refused to execute the deed. Soon thereafter the company began the construction of its contemplated road bed upon the land selected by it through defendant's farm, when the husband threatened to run the workmen off of his premises. Thereupon this suit was filed, seeking an injunction against defendant, Hiram Williams, to prevent him from interfering with the construction of the road, and also seeking a specific performance of the contract.  The clerk issued a temporary restraining order as prayed for, which continued for a month and twelve days, and upon defendant's motion it was dissolved by the circuit judge. In the meantime, plaintiff's workmen had been busy constructing the road, which they continued to do after the dissolution of the restraining order.  The case was prepared upon that branch which sought a specific performance, and upon final submission the petition was dismissed, and to reverse that judgment this appeal is prosecuted.

The land selected upon which plaintiff has constructed its road, and to which it seeks an enforced conveyance by defendants, is located partly along the north bank of the North Fork of Kentucky river and partly in the bed of that stream, there being between six hundred and eight hundred feet of the track located lengthwise in the stream; and at a point opposite defendant's dwelling the dump upon which the track is constructed occupies more than one-half of the original bed of the stream. By thus locating its track the water is caused to wash away the south bank of the stream and defendants' bottom land on that side is made to overflow, leaving deposits of sand. The bed of the river on that side, because of the excessive amount of water flowing at that point, has been cut out much deeper than it was before the construction of the railroad; a footbridge which defendant had across the stream has been destroyed, as has the only road which he had leading from the public road to his dwelling.

Defendants resisted specific performance upon several grounds, chief among which was fraud and mistake in

the execution of the contract, and that it was not within the contemplation of the parties that the railroad would be located along, and in the bed of the river. The stream at that point is perhaps one hundred feet wide, with running water at all seasons, and at times becomes turbulent. The lower court wrote no opinion, and we are not informed as to his reasons for denying the relief, but under the view which we take of the facts of the case we are convinced that the judgment finds ample support from the rules of equity governing application of the remedy of specific performance, and this independent of the charge of fraud in the execution of the contract, which charge is not established.

Aside from the facts which we have stated, it appears that the defendant, Hiram Williams, who was the only one consulted at the time of the execution of the contract, is a plain, plodding farmer, uneducated, scarcely able to read print, and wholly unable to read writing, although able from practice to write his name. In the very recent case of Darnell v. Alexander, 178 Ky. 404, in considering the application by the courts of the equitable remedy of specific performance, we had occasion to say:

"No rule of equity is more deeply rooted in the law than the one that a specific performance of a contract is not granted as a matter of right, but it is always addressed to the sound and reasonable discretion of the court to be exercised according to the circumstances of each case. This discretion, however, is not an arbitrary or capricious one, but is a sound judicial discretion to be exercised according to the principles of equity. 36 Cyc. 548-9; Pomeroy's Equity Jurisprudence, sec. 1405; 2 Story's Equity, secs. 769 and 742; Bowman v. Irons, 2 Bibb 78; Petty v. Roberts, 7 Bush 410; Cocanougher v. Green, 93 Ky. 519; Woolums v. Horseley, idem., 582; Williamson v. Dills, 114 Ky. 962, and Heydrick v. Dickey, 155 Ky. 222."

In addition to the text books and cases there referred to as circumscribing the application of this remedy, we may add Pomeroy on Contracts, sec. 33; Eastland v. Vanarsdale, 3 Bibb 274; Berry v. Frisbie, 120 Ky. 337, and Jones v. Prewitt, 128 Ky. 496. In the Williamson case, *supra*, addressing itself to the question in hand, the court said:

"Specific performance will not be decreed if the contract and situation of the parties be such that the remedy of specific performance will be harsh or oppressive." And quoting from Pomeroy's Equity Jurisprudence, sec. 1405, the court also said: "The oppression or hardship may result from unconscionable provisions of the contract itself, or it may result from the situation of the parties unconnected with the terms of the contract, or with the circumstances of its negotiation and execution, i. e., from external facts or events or circumstances. which control or affect the situation of the defendant."

The authorities referred to, and others which might be mentioned, in prescribing the caution with which courts should act when called upon to specifically enforce a contract empower them to more favorably consider the defendant's claim in resisting the performance than those of the plaintiff in seeking to enforce it. Thus in the Woolums case, *supra,* it is said:

"There is a distinction between the case of a plaintiff asking a specific performance of a contract in equity and that of a defendant resisting such a performance. Its specific execution is not a matter of absolute right in the party, but of sound discretion in the court. It requires less strength of case on the side of the defendant to resist the bill, than it does upon the part of the plaintiff to enforce it. If the court refuses to enforce specifically, the party is left to his remedy at law.

"Thus a hard or unconscionable bargain will not be specifically enforced, nor, if the decree will produce injustice or under all the circumstances be inequitable, will it be rendered. In other words, a court of equity will not exercise its power in this direction to enforce a claim which is not, under all the circumstances, just as between the parties, and it will allow a defendant to resist a decree, where the plaintiff will not always be allowed relief upon the same evidence.

"A contract ought not to be carried into specific performance unless it be just and fair in all respects. When this relief is sought ethics are considered, and a court of equity will sometimes refuse to set aside a contract and yet refuse its specific performance."

The harshness or oppression which an enforcement of the contract would entail, sufficient to deny its execution, may arise in many ways. It need not be founded upon either fraud or mistake in entering into the con-

tract as those terms are usually understood. Nor need the contract be tainted with such undue advantage as would authorize its cancellation. It is sufficient if an enforcement of the contract would produce conditions highly inequitable and unjust to the defendant, followed by injurious consequences which he can not be deemed to have contemplated when he executed the contract so as to make its execution operate harshly and oppressively upon his rights. As stated in Pomeroy on Contracts, *supra,* sec. 188, the hardship authorizing equity to refuse specific performance may arise "from something collateral or incidental to, but still connected with the contract, and because not involved in the express provisions not therefore so likely to have been suggested to the parties as possible; at all events, there is no presumption that it was thus foreseen; from events and circumstances entirely independent of any provisions of the contract—perhaps arising subsequently—and, therefore, a result which the parties could not have expected nor anticipated."

Some of the conditions and circumstances under which the remedy will be refused arise from and grow out of inadequacy of consideration and inequaliy in business experience and capacity of the parties at the time of the execution of the contract, i. e., where one of them is educated, well versed in business affairs and better prepared to know and comprehend the import of the contract than the other, although such inequality in these respects might not, standing alone, amount to actual fraud.

Coming now to the application of these legal principles to the facts of this case, let us see whether the court was correct or incorrect in dismissing the petition. In the first place there is great disparity between the parties with reference to educational and business qualifications. The small price of fourteen dollars in payment for the land actually taken, and in payment "of all claims for damages" to the rest of the farm because of the appropriation of the land taken is grossly inadequate when viewed in the light of the damages produced because of the location of the right of way and the construction of the road in the bed of the river. While inadequacy of price alone, under the authorities, *supra,* might not be sufficient to deny the relief sought, it is a fact which may be taken into consideration by the court, with other un-

just and inequitable circumstances, when called upon to grant the relief.

The defendant, aside from the damages produced by the water of the river overflowing his land and washing away the creek next to his residence, loses his footway across the creek to the public road, and also his way of ingress and egress to his home. These consequences are so unfair, unjust, harsh and oppressive, when viewed in the light of the meager consideration received, as to at once force the conclusion that they were not in the contemplation of the parties, or at least that of the defendant at the time he entered into the contract. Indeed it would have required great foresight on the part of one of considerable experience and astuteness to have contemplated that the terms of the contract sought to be enforced were broad enough to confer upon plaintiff the right to select for its right of way and to construct its road longitudinally upon any part of defendant's farm covered by the bed of the river. When so located the damages to the rest of defendant's farm would continue to accrue from time to time as the waters of the river encroach upon his residence south of the river and overflows of his bottom land periodically occur. Evidently the damages which he released and which the parties had in contemplation were those that at once accrued upon the construction of the road. They necessarily did not have in mind continuing and recurring damages growing out of its location, since such damages are almost if not quite incapable of measurement in advance.

Furthermore, equity in administering this character of relief in the exercise of a sound discretion lodged with the court should strictly construe the contract against the one seeking its enforcement where harsh and oppressive results would follow, although not to the extent as to be alone sufficient to deny the relief. Under this rule, we have but little doubt in holding that the terms of the contract literally construed do not provide for the appropriation by plaintiff of any part of the bed of the river (except by crossing it) for its right of way.

Only two kinds of land are mentioned in the contract, they being "bottom land" and "hill land." The meaning of the word "bottom" as designating a particular character of land is defined by Mr. Webster as "low land formed by alluvial deposits along a river; low lying ground; a dale; a valley, an intervale." It is

true that another definition of the word "bottom" as being "the bed of a body of water, as of a river, lake or sea," is given by him, but that definition is not intended to be a descriptive term of any particular character of land, but is only a definition of that which lies underneath and supports the body of water. The same author defines the word "hill" as applied to the surface of land as "a natural elevation of land of local area and well defined outline." We are not without judicial definition as to what is meant by the word "hill," as applied to land. In the case of Kerr v. Duvall, 62 Oregon, 470, in construing the meaning of the phrase "at the foot of the hill," the court said that the term "hill" meant "the beginning of an abrupt rise." It is a matter of universal knowledge that "hill land" applies to and includes all land which is not "bottom land," but neither of them as commonly understood includes the bed of a stream. With the defendant in this case no doubt viewing the terms of the contract to mean as we have just indicated, equity will not hesitate to deny specific performance of the contract when it is sought thereby to appropriate the bed of the river and when such appropriation would be followed by the harsh consequences enumerated.

In view of all the foregoing, we find nothing in this record that would favorably appeal to the sound legal discretion vested in the chancellor in behalf of the plaintiff. The cases referred to and relied upon by plaintiff's counsel do not apply, since they deal with claims of actual fraud, mostly appearing in executed contracts; the quantum of proof necessary to establish fraud, &c., questions not necessary to the decision of this case. Nor is the case of Curry v. Kentucky Western R. R. Co., 25 Ky. Law Rep. 1372, in conflict with this opinion, since the facts in that case are quite dissimilar to those appearing in this record.

Other questions are presented, among which is that defendant can not be required to execute a deed when he was only a joint owner of the land and when his wife declined to join him in the execution of the contract. But, in view of what has been said, it is unnecessary to discuss this question, and the same is true with reference to the others presented.

After the filing of this suit defendant and his wife filed an independent one, seeking to recover damages upon the basis of condemnation proceedings, and which

suit is now pending. Nothing herein said is intended to affect that suit.

Perceiving no error in the judgment, it is affirmed.