**WEST KENTUCKY COAL COMPANY, Appellant,**

v.

**J. D. NOURSE et al., Appellee.**

Court of Appeals of Kentucky.

Jan. 23, 1959.

**312**

Gordon, Gordon & Mills, Maubert R. Mills, Madisonville, for appellant.

Earle M. Nichols, Madisonville, for appellee.

MOREMEN, Judge.

This is an appeal from a judgment of the Hopkins Circuit Court which denied to appellant, West Kentucky Coal Company, specific performance of an option to convey by general warranty deed approximately 123 acres of land including all minerals for a stated consideration of $18,450. Appellees Nourse were owners of the land and had signed the option.

In the fall of 1947, negotiations were begun between Joe Nourse and an agent of West Kentucky Coal Company for the sale of the land that adjoined other land on which appellant was engaged in drilling coal deposits. The first conversations concerning the proposed sale were between the agent and Mr. Nourse who at the time was about seventy-seven years old, of limited education and in poor health. He was not literate. He could not read handwriting, and could read printed matter only with difficulty. He could not understand generally transactions which involved written instruments and usually looked to others to take care of him in business matters. The chancellor, in his opinion, characterized the men who represented appellant's company as "among the shrewdest business men we have."

It is difficult to say with certainty just what was said or agreed upon during these negotiations because practically every statement or contention made by one side was

denied or controverted by the other. It seems, however, that a tentative agreement was made for a two months' option to buy at a price of $150 an acre in the event that the option was to be given. Appellee Nourse does not concede that there was an agreement for such an option. It is his position that he desired to determine by proper drilling methods the amount of coal under the surface and thereafter to decide whether to lease the mineral rights on a royalty basis or to sell both the surface and the mineral rights entirely. For giving this simple right to explore the land, Nourse was to be furnished with the information obtained.

An option, however, was drawn by the company and presented to Mr. Nourse and it failed to contain certain reservations of timber and buildings which he had requested. That option was not signed. Later, a rewritten option was signed by the parties at the Nourses' home on May 18, 1948, and was duly acknowledged before a notary public. This option reads in part:

"That for and in consideration of the agreement of the Grantee (appellant) to expend not less than the sum of Two Hundred & 00/100 ($200.00) Dollars, in drilling and prospecting for coal upon the hereinafter described premises during the term hereof, and to furnish to Grantors the information and data secured in the course and as a result of said drilling and prospecting, the Grantors hereby do grant and convey to the Grantee, its successors and assigns, an option to purchase for the sum of Eighteen Thousand Four Hundred Fifty & 00/100 ($18,450.00) Dollars (representing One Hundred Twenty-Three (123) acres at One Hundred Fifty ($150.-00) Dollars per acre), the following described property, to wit:

" * * * If prior to the expiration of the option herein granted, Grantee elects to exercise same, he shall give notice to Grantors of his election so to do, and thereupon Grantors shall make, execute and deliver deed conveying good and merchantable title to said property to the Grantee, said deed to contain a covenant of General Warranty. Upon delivery of deed, the purchase price shall be paid.

"Notice hereunder shall be deemed to have been given by mailing same by Registered United States Mail to J. D. Nourse at Madisonville, Kentucky, R.F.D."

Under this option agreement, appellant entered upon the land, made exploratory drillings and, on July 12, 1948, gave notice by registered mail of its election to exercise its option and purchase the property. (The option was to expire on August 1, 1948.) At the time the option was exercised, appellant had not submitted to Nourse a record of the findings which had resulted from the drilling operations, and it was not until September 24, 1948, that such a record was furnished although Nourse had made demand for it on several occasions.

Appellant requested a deed that would conform to the option agreement. It may be noticed that the option contract calls for the delivery of a deed conveying good and merchantable title and containing a covenant of general warranty.

Appellee Nourse repudiated the option on the grounds that at the time it was signed by him he had not read it; that he had been deceived by false statements made by appellant's agents to the effect that the agreement gave to appellant only the right to make exploratory drillings and that in consideration of that right, appellant would give him the drilling information so that he could then decide whether to sell or to lease the coal rights on a royalty basis, and finally he did not own fee simple title to the land because of an encumbrance by a pre-existing mineral lease on the property which is known as the Miller-Harris Lease. It is undenied that all parties knew of the existence of the Miller-Harris Lease at the time the option was signed.

On December 21, 1948, West Kentucky Coal Company filed an action to enforce the specific performance of the option contract. Mr. Nourse filed an answer and an amended answer, and alleged in substance that the option was subject to the Miller-Harris Lease which was known to appellant and that he was unable to convey a fee simple title to the property; that his signature had been obtained by false and misleading statements of appellant's agent during a period when his mental faculties were impaired and that appellant first breached the contract by failing to deliver information obtained by the exploratory drilling and finally, that the option was unilateral and without consideration.

We will not undertake to give a resume of the testimony of each witness who was presented at the trial. Witnesses introduced by appellant testified that the option agreement was read to Nourse before it was signed by him and his wife; that no misleading or false statements were made, and that Nourse was fully aware of the consequences which would result from his act. The appellee testified as we have above stated and witnesses were produced to show his general physical and mental condition. One witness, Mullennix, corroborated to an extent appellee's version of the happenings at the time the option was signed.

The trial judge denied specific performance and dismissed the petition of West Kentucky Coal Company.

■ In Darnell v. Alexander, 178 Ky. 404, 199 S.W. 17, it was recognized that no rule of equity is more clearly defined in this state than is the one that specific performance of a contract is not granted as a matter of right, but is always addressed to the reasonable discretion of the court, to be exercised according to the facts of each case. The discretion, however, is. not an arbitrary or capricious one. A distinction exists even between the quality needed in a case where a plaintiff is asking specific performance of a contract and one where a defendant is resisting such performance. It requires less strength of case on the side of the defendant to resist than it does on the part of the plaintiff to invoke the right of specific performance because if the court refuses to enforce specifically, the party is still left to his remedy at law. Lexington & E. Ry. Co. v. Williams, 183 Ky. 343, 209 S.W. 59, 61. In that case, it was further said:

"The harshness or oppression which an enforcement of the contract would entail, sufficient to deny its execution, may arise in many ways. It need not be founded upon either fraud or mistake in entering into the contract as those terms are usually understood. Nor need the contract be tainted with such undue advantage as would authorize its cancellation. It is sufficient if an enforcement of the contract would produce conditions highly inequitable and unjust to the defendant, followed by injurious consequences which he cannot be deemed to have contemplated when he executed the contract so as to make its execution operate harshly and oppressively upon his rights."

■ In addition, in matters of specific performance, one rare incident is afforded where the equitable maxim of "clean hands" has not been ignored and the remedy is denied to one who has himself been in default. It is a fundamental principle in the law of contracts that before one may obtain the benefits the contract confers upon him, he himself must perform the obligation which is imposed upon him. Kuntz v. Peters, 286 Ky. 227, 150 S.W.2d 665.

■ The courts have been careful to exercise the extraordinary and delicate right of specific performance only in cases that are entirely free from fraud, illegal or inequitable conduct and, in addition, they

have required strict compliance with all terms of the contract by those who request its exercise. Asher v. Asher, 278 Ky. 802, 129 S.W.2d 552; Miller v. Prater, 267 Ky. 11, 100 S.W.2d 842; Bluegrass Realty Co. v. Shelton, 148 Ky. 666, 147 S.W. 33, 41 L.R.A.,N.S., 384; and Williamson v. Ingram, 243 Ky. 749, 49 S.W.2d 1005, where it was pointed out that even at law (as distinguished from equity) a party who commits the first breach of a contract is deprived of the right to complain of a subsequent breach by the other party.

In the case at bar, the trial court, in the opinion filed, based his refusal to grant specific performance on several grounds: First, because of the fact that appellant had failed to furnish appellee with information and data secured in the course and as a result of the drilling until about two months after the option would have expired. He did not accept appellant's excuse that it was not necessary to furnish such information because appellant exercised its option during the option period and although, under the circumstances, the data may have been valueless to appellee, at least he was entitled to the information which constituted the only consideration flowing to him for the giving of the option. The court treated this dereliction as being the first breach of the contract and therefore refused the specific remedy to one who was in default in respect to the covenants of the contract.

Second, the court was of the opinion that:

"Some coal under this land had been leased at 10 cts Ton royalty. 10 cents per ton royalty on all the coal under that land would amount to $48,500.00 to say nothing of the value of the surface. Plaintiff knew about that 485000 tons of coal and the defendant did not know though all the time was trying to find out about it and plaintiff was keeping it from him. That is what the record shows. It would appear that the option contract is harsh, oppressive, inequitable and one that the court should not specifically enforce."

■ Finally, the court seemed to have taken into consideration the fact that appellee was an uneducated man, scarcely able to read print, and wholly unable to read handwriting although he was able from practice to sign his name. On the other hand, appellant was represented by shrewd, intelligent men. The court had a right to do this in considering the equities in the case. The situation was almost identical in Lexington & E. Ry. Co. v. Williams, 183 Ky. 343, 209 S.W. 59.

■ The court also seemed to be impressed by the fact that the option said nothing about the Miller-Harris Lease although both parties knew of it, and later appellant demanded that a fee simple title be delivered. The option was signed on May 18, 1948, and almost five years elapsed before appellant by pleading filed (October 20, 1953) offered to accept the property subject to the lease. The trial court thought this a little late for appellants to place a new interpretation upon the agreement and ask enforcement of it. We need not pass on this legal point, but the omission of mention of the lease and the subsequent action of appellant indicates, at least, a desire to take unfair advantage of appellees.

The chancellor accepted as being true the testimony of appellee Nourse and other witnesses.

A consideration of the whole situation presented by the record fails to convince us that the chancellor acted capriciously or arbitrarily and the judgment is therefore affirmed.