RENDERED:  JANUARY 10, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0422-MR

OMNI COMMERCIAL PROPERTIES,
LLC                                                                                    APPELLANT


                            APPEAL FROM MADISON CIRCUIT COURT
v.                        HONORABLE DAVID M. WARD, JUDGE
                                ACTION NO. 21-CI-00159


MARK MOODY AND SHERRILL
MOODY                                                                              APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, L. JONES, AND KAREM, JUDGES.

ECKERLE, JUDGE:  Appellant, Omni Commercial Properties, LLC ("Omni"),

seeks review of a judgment of the Madison Circuit Court denying its request for

specific performance of a real estate purchase agreement ("the Purchase

Agreement") against Appellees, Mark and Sherrill Moody (collectively, "the

Moodys").  Omni contends that the Trial Court abused its discretion in denying

specific performance based on its finding that the Moodys failed to comply fully with their obligations under the Purchase Agreement. However, the Trial Court also found that Omni failed to comply fully with its own obligations under the Purchase Agreement. Under these circumstances, the Trial Court had the discretion to deny specific performance. Hence, we affirm.

The relevant facts are not in dispute. On January 7, 2021, Omni entered into two separate contracts with the Moodys for the purchase of 714 Candlewood Drive and 716 Candlewood Drive, which are both located in Berea, Kentucky. Brandon Tyree, Omni's owner ("Tyree"), signed the Purchase Agreements on Omni's behalf. The sales of both properties were originally set to close on February 22, 2021. The 714 Candlewood Drive purchase closed as provided in that Purchase Agreement.

However, the route to attempting to finalize the 716 Candlewood Drive property was circuitous. The Purchase Agreement for 716 Candlewood Drive had listed a sale price of $279,000.00, and that amount was originally to be financed. However, on January 21, 2021, Omni advised the Moodys that it intended to pay cash for the property. On February 16, 2021, the parties removed what was described as a "roofing contingency" from their agreement. They also continued to engage in negotiations as to other contingencies related to the sale. Moreover, the property was the subject of an ongoing eviction again by the

Moodys against a tenant of that property. Accordingly, Omni and the Moodys agreed to extend the date of the closing for approximately 30 days, to March 26, 2021, to address all of these concerns. The extension of the closing date required Omni to place an additional $10,000.00 in escrow.

Shortly before the second closing date, on March 19, 2021, Tyree requested that the Moodys provide documentation that the roofing contractor had been paid. On March 25, 2021, Omni's real estate agent, Cassie Foley ("Foley"), informed the Moodys that Omni had just recently applied for financing and requested that the closing date be extended again, for an additional 30 days. No mention was made of Omni's earlier intention to pay cash without financing. The Moodys agreed to the extension, subject to a non-refundable $10,000.00 payment into escrow. Omni alternatively proposed that the Moodys refund the escrow amounts already paid and execute a release. The parties could not reach an agreement, and the March 26, 2021, closing did not go forward.

On March 29, 2021, Omni's closing attorney, Tracy Blevins ("Blevins"), emailed the Moodys identifying potential title defects, including a lien by the roofing contractor. This same contractor had worked on the roof on the other property, which did close. Shortly thereafter, the Moodys re-listed the property for sale.

On April 5, 2021, Omni filed suit seeking specific performance of the Purchase Agreement and damages flowing from the Moodys' contract breach. Specifically, Omni alleged that the Moodys failed to: (1) close the sale transaction within the time requirements or reasonable extensions; (2) fulfill their obligations, including installing a new roof; (3) provide proof that the tenants of the property were evicted; and (4) extend the terms of the contract without an additional, non-refundable deposit. During litigation, Omni expounded upon the Moodys' failures to include neglecting to: (1) provide access for an inspection; (2) give proper notice of the status of the eviction; (3) obtain a home warranty; (4) rectify an issue with the Heating, Ventilation, and Air Conditioning ("HVAC") unit; (5) provide proof that the property could be conveyed free of any roofing liens; and (6) agree to a reasonable extension of time. The Moodys responded that Omni never requested the additional information or conditions prior to the extended closing date. In addition, the Moodys noted Omni's own failures, including providing proof of a loan commitment as required by the Purchase Agreement.

Over two years after the commencement of litigation, the matter proceeded to a bench trial on October 13, 2023. Four months later, on February 28, 2024, the Trial Court entered findings of fact, conclusions of law, and a judgment. The Trial Court noted at the outset that the parties were sophisticated in the negotiation and purchase of real estate, and yet that they had decided against

-4-

drafting a contract to conform to their desires. Instead, they opted to use a form contract that offered less-than-ideal clarity and often more beneficial terms to the buyer. The Trial Court held that the Purchase Agreement included an implied covenant of good faith and fair dealing that imposed a duty upon the parties to undertake all actions reasonably necessary to fulfill the contract. In its findings, The Trial Court addressed the defenses asserted by both Omni and the Moodys. However, the Trial Court found none to be entirely convincing.

In its detailed findings, the Trial Court first rejected the Moodys' alleged justifications for their refusal to extend the closing date. In particular, the Trial Court found that, under the Purchase Agreement, Omni's failure to provide proof of financing provided only Omni with the unilateral right to void the contract. The Trial Court also noted that the Purchase Agreement failed to specify that "time is of the essence," and indeed, that it had included provisions for extensions under certain circumstances. Consequently, the Trial Court held that the Moodys had an obligation to grant Omni a reasonable extension to close the sale.

The Trial Court then turned to Omni's defenses to its failure to close the sale by the second, March 26, 2021, date. First, the Trial Court held that the Purchase Agreement required the Moodys either to hire a licensed and insured roofing contractor to replace the roof, or to escrow the amount of the roof

-5-

replacement, not to exceed $10,000.00, at or before closing. The Moodys provided conflicting information to Omni about which of these options they intended to exercise. Nonetheless, the Moodys hired a contractor to replace the roofs on both the 714 and 716 Candlewood Drive properties. While Omni objected to the lack of certification documentation, it did not raise concerns about the potential liens until after the extended closing date had passed. Nonetheless, as the Trial Court delineated, the parties agreed to eliminate the roofing contingency in the February 16, 2021, amendment. Consequently, the Trial Court held that Omni's claim regarding the Moody's obligation to replace the roof was not a valid excuse for its failure to close the sale.

Second, the Trial Court addressed Omni's title-related claims concerning both the potential roofing lien and the eviction action. With regard to the lien, the Trial Court noted that Omni closed on 714 Candlewood Drive despite the same concerns, and that no lien has ever been asserted on either property. And the Trial Court re-emphasized that Omni never objected to the lack of roofing documentation until after the closing date. The Trial Court also separately noted that Omni failed to provide the Moodys with notice of any title defect as required by the Purchase Agreement. Thus, the Trial Court held that Omni's claim on this point was not a valid excuse for its failure to close the sale.

-6-

Similarly, regarding the eviction and Omni's lack of access to the property, the Trial Court found that the litigation against the tenants did not prevent Omni from inspecting the property, and that the Moodys provided Omni's agent with access to the property as requested. The Court further found that, while the Moodys failed to clarify the status of the eviction, Omni never indicated that it would be an impediment to the sale until after the closing date. In addition, the eviction process was a matter of public record that Omni could have discovered on its own with reasonable diligence had it wanted to do so. Under these circumstances, the Trial Court rejected Omni's defense of a valid excuse to close the sale because of its failure to complain to the Moodys prior to closing of the alleged problems of the eviction and the alleged lack of access.

Third, the Trial Court found no evidence of any issues with the HVAC unit or that Omni ever communicated any concern about this matter prior to the closing date. The Court recognized that the Moodys had an obligation to obtain a home warranty but held that the Moodys could not comply due to Omni's failure to proceed with the closing in good faith.

The Trial Court ultimately concluded that the Moodys had an obligation either to close on the sale or provide a reasonable extension of the closing date. While the Moodys offered to extend the closing date on the condition of an additional, non-refundable deposit, the Trial Court found that the Moodys

were nonetheless obligated to provide the information requested by Blevins, and that they failed to do so. Yet, on the other hand, the Trial Court also concluded that Omni was likewise not diligent in its efforts to obtain this information or close the sale. It summarized the Moodys' desire to close and Omni's lack of responsiveness thusly:

> Relevant to Sellers' actions is the fact that it was Seller Mark Moody who contacted the Buyer's agent on March 19, 2021, Cassie Foley, concerning the upcoming and already extended closing date of March 26, 2021, inquiring as to whether "everything's moving forward for next Friday?" After receiving no immediate response to his 9:40 a.m. text, he asks at 3:04 p.m. that same day "Any update?" Notably as it relates to Plaintiff's other claims, neither Ms. Foley nor Brandon Tyree, nor anyone else responded to Mr. Moody prior to March 26th, the actual extended closing date, requesting information about the payment of the roofer, access to the property, whether an HVAC unit has been fixed, etc. Rather, Ms. Foley's response was "I emailed the loan officer earlier today and she hasn't responded yet."

Findings of Fact, Conclusions of Law, and Judgment, February 28, 2024. Record on Appeal ("ROA") at 400 (footnotes omitted).

In conclusion, the Trial Court found that, while the Moodys were not entirely diligent in their communications, Omni was less than assiduous in fulfilling its obligations to close by March 26, 2021. Significantly, the Trial Court found that Omni failed to document its financial ability to close the transaction by that date, either through a loan or cash. Given Omni's multiple failures to comply

-8-

strictly with its own obligations, the Trial Court concluded that an award of specific performance would be inequitable. Rather, the Trial Court rendered a judgment to Omni only for the amount held in escrow, but it allowed no other damages or relief.

Following entry of the judgment, Omni filed a motion to alter, amend, or vacate pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05. The Trial Court denied the motion in an order entered on March 27, 2024. This appeal followed. Additional facts will be set forth below as necessary.

As an initial matter, we note that Omni's brief fails to include a statement showing how and where its arguments were preserved for review before the Trial Court, as required by Kentucky Rule of Appellate Procedure ("RAP") 32(A)(4). After this matter was submitted to the merits panel, Omni filed a motion for leave to file a supplemental brief to include such a statement. We appreciate Omni's unprompted, although belated, effort to comply with the rule that it had violated. However, we were compelled to deny the motion because the very rule mandates compliance before briefing and not afterward, there is no rule that permits supplemental briefing to cure deficiencies that should never have been tendered, and granting the motion would merely require more briefing by a non-offending party.

The rule requiring preservation statements is meant to conserve judicial resources and, importantly, ensures appellate courts apply the appropriate standard of review to each issue. *See Gasaway v. Commonwealth*, 671 S.W.3d 298, 311 (Ky. 2023) (citations omitted). We are empowered to strike a brief for a party's failure to comply substantially with the rules for briefing. RAP 31(H)(1). However, the Supreme Court of Kentucky has held that "[b]ecause preservation determines the appropriate standard of review, an appellate court should determine for itself whether an issue is properly preserved." *Gasaway*, 671 S.W.3d at 311.

In this case, while we do not condone Omni's actions, we determine that sanctions are not appropriate. As noted above, Omni brought its initial failures to this Court's attention and made a good faith effort to correct them. Moreover, it is clear from the record that Omni's complaint, the bench trial below, and the Trial Court's judgment were all focused on Omni's claim seeking specific performance of the Purchase Agreement. Thus, the issue for review is plain and its review simple. We will thus excuse the error on this occasion. However, we strongly caution that adherence to the RAPs is mandatory, and future failures will not likely be countenanced.

As this matter was tried before the Trial Court without a jury, our review of factual determinations is made under the clearly erroneous standard. Kentucky Rules of Civil Procedure ("CR 52.01"). A finding of fact is not clearly

erroneous if it is supported by substantial evidence, which is "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). It is within the province of a trial court as the fact-finder to determine the credibility of the witnesses and the weight given to the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008). We review a trial court's conclusions of law *de novo*. *Gosney v. Glenn*, 163 S.W.3d 894, 898 (Ky. App. 2005).

Omni does not contest any of the Trial Court's factual findings. Rather, Omni argues that the Trial Court abused its discretion by denying specific performance despite its finding that the Moodys breached their duties under the Purchase Agreement. Omni points to Paragraph 6 of the Purchase Agreement, which provides:

> In the event of a default by Purchaser, Seller shall receive the earnest money deposit and shall also be entitled to pursue any other legal remedy, including the right to bring an action against Purchaser for damages or for specific performance of this Contract. In the event of a default by Seller, Purchaser shall be entitled to a refund of the earnest money deposit and shall also be entitled to pursue any other legal remedy, including the right to bring an action against Seller for damages or for the specific performance of this Contract.

We first note that this provision merely allows a non-defaulting party to pursue an action for damages or specific performance. It does not require a

Court to grant such relief. And, importantly, it does not address the circumstances here where both the purchaser and the seller have defaulted in their contract obligations.

We review the Trial Court's equitable decision to deny or grant specific performance for abuse of discretion. *See West Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 314 (Ky. 1959) ("[S]pecific performance of a contract is not granted as a matter of right, but is always addressed to the reasonable discretion of the court, to be exercised according to the facts of each case."). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). More specifically, a court abuses the discretion afforded it when "(1) its decision rests on an error of law . . . or a clearly erroneous factual finding, or (2) its decision . . . cannot be located within the range of permissible decisions." *Miller v. Eldridge*, 146 S.W.3d 909, 915 n.11 (Ky. 2004).

Omni claims that the Trial Court's discretion to deny specific performance is limited to situations where there is a showing of fraud, breach or misconduct by the buyer, or undue hardship. *Puritan Homes, Inc. v. Abell*, 432 S.W.2d 632, 638 (Ky. 1968). However, *Abell* also emphasizes that the party seeking relief by specific performance must not be at fault and must be willing to

complete any remaining contractual requirements on its own part. *Id. Abell* also cites to *Nourse*, which holds that "[t]he courts have been careful to exercise the extraordinary and delicate right of specific performance only in cases that are entirely free from fraud, illegal or inequitable conduct and, in addition, they have required strict compliance with all terms of the contract by those who request its exercise." *Nourse*, *supra*, at 314-15.

Omni also relies extensively on this Court's unpublished opinion in *Jones v. Triple Springs, Inc.*, No. 2023-CA-0229-MR, 2024 WL 737343 (Ky. App. Feb. 23, 2024) (unpublished), which is cited pursuant to RAP 41(A). *Jones* cites to both *Abell* and *Nourse* for the legal propositions cited above, which offer Omni no relief. Furthermore, the buyer in that case fully performed all of his obligations, while the seller failed to do so. *Id.* at * 6-7. Under these circumstances, this Court held that the trial court in that case abused its discretion by denying specific performance. *Id.* at *7. This Court further held that in that particular case, there were no findings of injustice or hardship sufficient to deny specific performance. *Id.* at *8-9.

While it is true that the Trial Court here did not make any findings of fraudulent, illegal, or unconscionable conduct or of injustice or undue hardship, *Jones* offers no solace to Omni here. First, it is an unpublished and non-binding case. Second, it is entirely distinguishable from the case at hand. In its detailed

findings of fact, conclusions of law, and order, the Trial Court here performed a yeoman's job of clearly setting out the detailed facts and long-standing case law that the Moodys and Omni each bore legal responsibility for the failures to close the Purchase Agreement:

> The Court determines that time was not of the essence of the parties' purchase agreement as it was neither explicitly stated nor may such requirement be implied given the facts of this case. Accordingly, the Defendants, Mark and Sherrill Moody, were in breach by failing to timely clear certain title exceptions once explicitly notified of same by Attorney Blevins in her email sent after the already extended closing date. However, given (1) Buyer's failure to strictly comply during the contract period with the Notice obligations required by the purchase agreement with respect to exceptions to title, (2) Buyer's request transmitted to Sellers through their agent that Buyer needed thirty (30) additional days beyond the extended closing date to obtain financing which the Court determines an unreasonable extension, (3) Buyer's failure to timely bring its multiple concerns clearly and in writing to the attention of Sellers prior to the extended closing date of March 26, 2021, and (4) Buyer's insistence that any obligation on its part be conditioned upon its further inspection of the realty with it then being provided the option to determine whether it desired to go forward with the purchase, the Court determines that specific performance of the contract is not appropriate as same would be inequitable.

Findings of Fact, Conclusions of Law and Judgment, February 28, 2024. ROA at 405-06.

We adopt the Trial Court's well-reasoned analysis in its entirety. And as noted above, the Trial Court also found that Omni never demonstrated its capacity to close on March 26, 2021, either with bank financing or cash on hand. As the party seeking specific performance, Omni bore the burden of proving that it complied with all of its duties under the Purchase Agreement. Given the Trial Court's uncontested finding to the contrary, we find that the Trial Court did not abuse its discretion by denying Omni's request for specific performance.

Accordingly, we affirm the judgment of the Madison Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rodney G. Davis
Richmond, Kentucky

BRIEF FOR APPELLEES:

Zachary R. Smith
Lexington, Kentucky