NOT RECOMMENDED FOR PUBLICATION
File Name: 23b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: OGGUSA, INC., fka GenCanna Global USA, Inc.,

*Debtor*.

———————————————————————————————

OGGUSA, INC., fka GenCanna Global USA, Inc.,

*Plaintiff-Appellant*,

*v.*

LOUISVILLE DRYER COMPANY,

*Defendant-Appellee*.

> No. 22-8010

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at Lexington.
No. 5:20-bk-50133; 5:20-ap-05032—Gregory R. Schaaf, Bankruptcy Judge.

Decided and Filed: June 1, 2023

Before: BAUKNIGHT, DALES and GUSTAFSON, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ON BRIEF:** April A. Wimberg, V. Brandon McGrath, Gina M. Young, DENTONS BINGHAM GREENEBAUM LLP, Louisville, Kentucky, for Appellant. F. Larkin Fore, FORE LAW PLLC, Louisville, Kentucky, Chrisandrea Turner, STITES AND HARBISON, PLLC, Lexington, Kentucky, for Appellee.

_____

## OPINION

_____

SUZANNE H. BAUKNIGHT, Bankruptcy Appellate Panel Judge. This appeal involves a contract dispute, with the main issue being who breached first. OGGUSA, Inc. f/k/a

"GenCanna" ("GenCanna") and Louisville Dryer Co. ("LDC") contracted by a series of proposals under which LDC would manufacture equipment for use in GenCanna's cannabinoid (CBD) business.  During the time LDC was manufacturing the equipment, GenCanna experienced financial difficulties.  In March 2019, GenCanna breached the contract by failing to make progress payments, but GenCanna obtained third-party financing to complete part of the equipment from SQN Asset Income Fund V, L.P. ("SQN").  As part of the financing arrangement, SQN, LDC, and GenCanna executed a Ratification and Partial Assignment on May 31, 2019 (the "Agreement").  The Agreement incorporated the equipment manufacturing proposals, including the payment and delivery terms, and brought SQN in as a party to the contract and assignee of GenCanna's rights to four of the six pieces of equipment (the "Assigned Equipment").

Notwithstanding the infusion of funds from SQN, GenCanna continued to experience financial difficulties.  These financial difficulties led to a delay in construction of the facility where the equipment was to be housed.  GenCanna's other facility was destroyed by fire.

In October or November 2019, LDC informed SQN and GenCanna that the Assigned Equipment was ready for delivery (with delivery defined as GenCanna's loading the equipment at the LDC facility).  GenCanna, however, was unable to take possession of the Assigned Equipment, and it remained at the LDC facility, taking up significant space long after LDC finished building it.  For the most part, LDC dealt directly with SQN in its attempt to deliver the Assigned Equipment.

Around the time the Assigned Equipment was completed, LDC became nervous about GenCanna's ability to pay the remainder owed on equipment that was not assigned under the Agreement.  LDC sent to GenCanna an email dated October 16, 2019 (the "October 16 Email"), and a letter dated December 3, 2019 (the "December 3 Letter"), that accused GenCanna of being in default, although it was later determined GenCanna was not behind on progress payments because of the amounts that had been paid by GenCanna and SQN.

Eventually, GenCanna was forced into an involuntary chapter 11 bankruptcy in January 2020 and quickly consented to the bankruptcy proceedings.  GenCanna treated the Agreement as

executory, rejected it under 11 U.S.C. § 365(a), and demanded the return of $1,790,023. LDC filed a proof of claim for the balance remaining due under the contract.

Ultimately, after LDC refused to return any payments it received under the Agreement, GenCanna filed an adversary proceeding against LDC on September 17, 2020. GenCanna asserted that LDC breached the contract before rejection because LDC delivered none of the equipment to GenCanna and did not return the payments made by GenCanna to LDC. Later, at the summary judgment stage, GenCanna revised its argument to claim that the October 16 Email and December 3 Letter in which LDC declared GenCanna in default evidenced LDC's anticipatory breach or repudiation of the Agreement. LDC countered that GenCanna's postpetition rejection of the contract under § 365(a) was the first breach and that GenCanna should be required to pay the amount due under the contract.

After trial, the bankruptcy court ruled in favor of LDC on GenCanna's claims, finding that GenCanna had not established a pre-rejection breach by LDC resulting from an anticipatory repudiation under Kentucky law because the October 16 Email and December 3 Letter did not amount to an unequivocal and clear communication by LDC to cease performance under the Agreement. Additionally, because the bankruptcy court ruled that LDC had not established damages, it sustained GenCanna's objection to LDC's proof of claim. GenCanna timely filed this appeal; LDC did not cross-appeal.

Under applicable state law, the first party to breach cannot recover contract damages. *W. Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 315 (Ky. Ct. App. 1959). GenCanna claimed that LDC breached first through prepetition communications before it treated the contract as executory and rejected it under 11 U.S.C. § 365. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1666, 203 L. Ed. 2d 876 (2019) (holding "that under Section 365, a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy"). Because GenCanna has failed to establish that the bankruptcy court relied on clearly erroneous factual findings or that it misapplied the law, the bankruptcy court's conclusion that LDC was not the first party to breach is affirmed.

**ISSUES ON APPEAL**

1.  Did the Bankruptcy Court incorrectly analyze OGGUSA, Inc. f/k/a GenCanna Global USA, Inc.'s breach of contract claim as a claim for anticipatory breach under Kentucky law?

2.  Did the Bankruptcy Court incorrectly find that OGGUSA, Inc. did not meet its burden of proving Louisville Dryer Company breached the Agreement under Kentucky law?

(Statement of Issues on Appeal, Adv. Proc. 20-05032, ECF No. 155 at 2.)

In its summary of the argument on appeal, GenCanna also suggests a third issue, arguing that "even if LDC did not breach the Agreement with the [October 16] Email or the [December 3] Letter, in accordance with Kentucky law, LDC breached the Agreement when it failed to return the deposits associated with the fourth Dryer and second Cooler." (Appellant's Br. at 22, BAP Case 22-8010 ECF No. 16.) By this argument, GenCanna attempts to reframe its unjust-enrichment claim (to recover amounts that it paid to LDC as "deposits") as a breach-of-contract claim, an argument that was not raised in the bankruptcy court and is made for the first time on appeal. The Panel rejects this third aspect of the appeal largely because the bankruptcy court dismissed the unjust-enrichment claim and GenCanna did not appeal that aspect of the court's decision. Moreover, any unjust-enrichment theory is inconsistent with the contract remedy GenCanna elected to pursue.

**JURISDICTION AND STANDARD OF REVIEW**

The United States District Court for the Eastern District of Kentucky has authorized appeals to the Panel, and no party has timely filed to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right under 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ragone v. Stefanik & Christie, LLC* (*In re Ragone*), No. 20-8013, 2021 WL 1923658, at *1 (B.A.P. 6th Cir. May 13, 2021) (quoting *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020)). "A judgment resolving all issues in an adversary proceeding is the quintessential example of a final judgment from which an immediate appeal as of right lies under 28 U.S.C.

§ 158(a)(1)." *Limor v. Anderson* (*In re Scarbrough*), No. 18-8028, 2019 WL 1418698, at *1 (B.A.P. 6th Cir. Mar. 28, 2019).

To a large extent, the bankruptcy court's ruling centers on the court's determination as to the legal significance of the communications between the parties after they formalized their contract in the Agreement. In reaching its conclusion, the bankruptcy court made factual findings regarding the parties' post-contracting intentions based on their conduct. To do so, the bankruptcy court primarily relied on the witnesses' testimony and the exhibits presented, but the bankruptcy court also engaged in a certain amount of contract interpretation to determine whether either party's actions constituted a breach under Kentucky law.

The bankruptcy court's factual determinations are reviewed under a clearly erroneous standard. *Rockne's, Inc. v. Dan Mazzola, Inc.* (*In re Dan Mazzola, Inc.*), No. 19-8007, 2020 WL 529604, at *1 (B.A.P. 6th Cir. Jan. 28, 2020).

> "The particular factual findings of the bankruptcy court are reviewed for 'clear error.'" *In re Jackson*, 554 B.R. 156, 159 (B.A.P. 6th Cir. 2016), *aff'd*, No. 16-4021, 2017 WL 8160941 (6th Cir. Oct. 18, 2017) (citations omitted).
>
> In this appeal, the factual finding that the bankruptcy court reached is that the franchise agreement had not been terminated prepetition. This finding required the bankruptcy court to interpret the contract. Questions of contract interpretation are reviewed de novo. *Bender v. Newell Window Furnishings, Inc.*, 681 F.3d 253, 259 (6th Cir. 2012); *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014).

*Dan Mazzola, Inc.*, 2020 WL 529604, at *1.

> "[F]indings of fact . . . must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility." Fed. R. Civ. P. 52(a)(6); *see In re Aubiel*, 534 B.R. 300, 302 (B.A.P. 6th Cir. 2015); *Lester v. Storey* (*In re Lester*), 141 B.R. 157, 160 (S.D. Ohio 1991). "Factual findings are clearly erroneous only when the reviewing court 'is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ray*, 803 F.3d 244, 265 (6th Cir. 2015) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511, 84 L. Ed. 2d 518 (1985) (citations omitted).

*In re Felix*, 582 B.R. 915, 918 (B.A.P. 6th Cir. 2018.)

Accordingly, the bankruptcy court's interpretations of the Agreement must withstand *de novo* review, but its factual findings, including with respect to the parties' communications at the heart of this appeal, must survive the more deferential review under the "clearly erroneous" standard.

## FACTS[1]

GenCanna was part of an agricultural-technology company primarily engaged in the development of hemp genetics and the production and distribution of hemp and CBD products. LDC manufactures equipment including rotary dryers and coolers that can be used to process hemp.  The two companies contracted for LDC to manufacture and GenCanna to purchase four large commercial dryers (each one roughly the size of a school bus) and two cooling units.  LDC manufactured three dryers and one cooler before GenCanna's bankruptcy proceedings.  The appeal challenges the bankruptcy court's determination that LDC did not breach the contract by anticipatory repudiation before GenCanna's rejection of it during the bankruptcy case. GenCanna also asserts that LDC "breached" the contract by failing to return the payments that GenCanna now characterizes as deposits, claiming that LDC would not have been entitled to retain the payments under the Uniform Commercial Code ("UCC") as adopted in Kentucky notwithstanding GenCanna's breach.

In December 2018, through Proposal 4644-STD, LDC offered to manufacture three rotary steam tube dryers at the price of $4,074,135 ($1,358,045 each), and through Proposal 4644-CCAC, LDC offered to manufacture one counter-current rotary air cooler.  The parties revised the dryer proposal on January 4, 2019, and revised the cooler proposal on January 11, 2019.  LDC began working on the equipment in early 2019.

In February 2019, LDC sent GenCanna two revised proposals that increased the purchase order to four dryers and two coolers.  The February proposals provided that "[t]he equipment [in] this proposal is quoted FCA from point of origin, loaded on customer-supplied transport; all

---

[1]The parties stipulated to most of the facts in this appeal.  (Stipulations of Fact Between OGGUSA, Inc. and Louisville Dryer Company ("Stipulations"), Adv. Proc. No. 20-05032, ECF. No 133, Feb. 8, 2022).

permits, taxes, installation, and freight are the responsibility of the purchaser." (Stipulations, No. 12.) The February proposals included certain progress payment terms ("Progress Payment Terms"), including a 30% project initiation payment and concluding with the final 10% due on readiness to ship.

GenCanna and LDC exchanged writings that confirmed their assent to the February proposals, with the price for four dryers totaling $5,432,180 ($1,358,045 each) and the price for two coolers totaling $603,674 ($301,837 each).

GenCanna paid LDC $1,300,000 on January 2, 2019, as a down payment on the total amount of $4,349,501 ("GenCanna Payment 1"). On January 15, 2019, GenCanna paid LDC $490,023 ("GenCanna Payment 2") for unrelated projects. Later, the parties agreed to apply GenCanna Payment 2 to the purchase price of the four dryers and two coolers that are the subject of this appeal. These two payments resulted in a total payment by GenCanna of $1,790,023.

In March 2019, GenCanna failed to make payments per the Progress Payment Terms. Following negotiations, GenCanna procured financing for three of the dryers and one of the coolers from SQN. "On or around May 31, 2019, LDC, GenCanna and SQN entered into the [Agreement]" (Stipulations, No. 18), with SQN becoming the assignee of the Assigned Equipment (i.e., three dryers and one cooler).

The Agreement is the only written "agreement" between LDC and GenCanna that covers the entire purchase transaction. It incorporates the proposals for all four dryers and two coolers, even though SQN was providing funding in exchange for assignment of only three dryers and one cooler. The Agreement applied the two GenCanna Payments to the purchase price, as well as a $3,600,000 payment from SQN received by LDC on May 31, 2019. This left a remaining balance of $645,831 due (eventually) on the four dryers and two coolers. The Agreement set an expected delivery date of early October 2019 for the first three dryers. Under the Agreement, the delivery date for the fourth dryer would be determined after delivery of the first three. The Agreement does not set a delivery date for the coolers.

On June 5, 2019, GenCanna emailed LDC to check on the progress of the equipment. On June 26, 2019, GenCanna visited LDC's facilities to inspect the equipment. At the time, GenCanna was building a new facility to house the equipment (the "Mayfield Facility").

On September 16, 2019, LDC received an email indicating that there would be further delays regarding the readiness of the Mayfield Facility to receive the equipment. One month later, on October 16, 2019, Mike Mercer, LDC's President, sent the October 16 Email to GenCanna stating:

> GenCanna remains in default under its contract with [LDC]. To mitigate the damages caused by GenCanna's continuing default, [LDC] will, in a private sale begin immediately to attempt to resell the remaining [fourth] dryer.
>
> Please respond immediately if you have any objection to this action or wish to discuss the viability of a cure period.

(ECF No. 124-37.) Richard Drennen, GenCanna's COO, immediately replied:

> Looping in our General Counsel under the circumstances but please know that we are close to a financing that should close on or before the end of the month, at which time we intend to pay the balance of the dryer.

(ECF No. 124-38; Stipulations, Nos. 30-33.)

This email exchange is the primary basis for GenCanna's assertion that LDC repudiated the contract. The parties now agree that GenCanna was not in payment default at the time of the email exchange, although both parties assumed at the time of the October 16 Email that GenCanna was in default. LDC did not attempt to sell the fourth dryer and second cooler, which were not complete when the October 16 Email was sent, and ultimately those two items were never completed.

On November 4, 2019, LDC provided notice to SQN that the Assigned Equipment was ready for delivery. SQN responded that it would need to check with GenCanna on the state of the Mayfield Facility. GenCanna never completed the Mayfield Facility, where it intended to locate the equipment that LDC was manufacturing.

On December 3, 2019, Trey Mathis, LDC's Vice President and General Manager, sent the December 3 Letter to GenCanna. The December 3 Letter proposed satisfaction of the

remaining amount owed by GenCanna under the Agreement if GenCanna released any interest in the equipment, which was identified as the materials to build the fourth dryer and second cooler. It also contained a "Consent and Full Release." (Adv. Proc. ECF No. 129-25.) GenCanna did not sign the Consent and Full Release or agree to the terms of the December 3 Letter. GenCanna now argues the December 3 Letter constituted a breach by LDC.

The involuntary bankruptcy case was commenced against GenCanna on January 24, 2020. On February 6, 2020, GenCanna admitted it was insolvent, consented to the bankruptcy, and filed voluntary petitions for its related entities. LDC filed a complaint against SQN in state court on June 29, 2020, related to delivery of the Assigned Equipment. LDC and SQN reached a settlement on August 6, 2020. The Assigned Equipment was delivered to a storage field in western Kentucky at the direction of SQN and at SQN's cost in October 2020. Both SQN and LDC filed proofs of claim in GenCanna's bankruptcy case.

GenCanna filed an adversary proceeding against LDC on September 17, 2020. In its complaint, GenCanna asserted as Count I that LDC had breached the contract because as of the petition date, it had not delivered any of the equipment to either GenCanna or SQN and refused to return the deposits GenCanna had paid. (Compl., Adv. Proc. ECF No. 1, at ¶¶ 32-33. 41-47.) GenCanna averred three additional claims against LDC: "Count II - Unjust Enrichment," "Count III – Turnover," and "Count IV – Disallowance of Claim." (*Id*. at 7.) Before trial, on a summary judgment motion, the bankruptcy court dismissed Count II and Count III, leaving only the contract-related claims (Count I and IV).

By the time of the trial, GenCanna had changed its position concerning Count I to argue that the October 16 Email and December 3 Letter constituted a breach by LDC based on LDC's assertion that GenCanna was in default and the demand for payment. The parties agree that, in hindsight, GenCanna was not in payment default at the time of the October 16 Email because the Assigned Equipment, which had been completed, had been fully paid for. Further, progress payments were not yet due on the fourth dryer and second cooler under the terms of the Agreement.

The bankruptcy court held a trial on February 22, 2022.  The proposals, the Agreement, and the parties' emails and letters were admitted as evidence.  Gary Broadbent (GenCanna's General Counsel), Richard Drennen (GenCanna's Chief Operating Officer), Alan Calderon (GenCanna's Chief Financial Officer), and Trey Mathis (LDC's Vice President and General Manager) testified.  After trial, the bankruptcy court issued a written opinion finding that the sending of the October 16 Email did not amount to an anticipatory breach of the contract.  The bankruptcy court instead found that the October 16 Email was nothing more than a communication between the parties with no legal impact.  (Mem. Op., Adv. Proc. ECF No. 140, at 15 ("Ultimately, the October 16 email has no legal significance.").)  The bankruptcy court found that "Mathis's trial testimony revealed that LDC simply wanted to open a line of communication to understand how GenCanna intended to proceed under the Agreement given its financial circumstances." (*Id.*)  The bankruptcy court also found that "GenCanna did not treat the [October 16 Email] as a repudiation of future performance by LDC [because] . . . Drennen responded almost immediately to assure LDC that GenCanna was pursuing additional financing and intended to satisfy its payment obligation." (*Id.* at 14.)

Likewise, the bankruptcy court concluded that the December 3 Letter was merely a communication between the parties and not a breach by LDC, stating that the "December 3 Letter was intended as a walk-away resolution of the parties' situation given the dire financial circumstances facing GenCanna." (*Id.* at 16.)  The bankruptcy court noted that the December 3 Letter "did not refer to termination of the Agreement or the obligations thereunder." (*Id.*)  Thus, the bankruptcy court found, "The December 3 Letter, like the October 16 Email, had no legal effect on the parties' relationship." (*Id.*)

The bankruptcy court did not address GenCanna's alternative[2] argument that GenCanna made in its trial brief and in this appeal that LDC breached by its retention of the "deposits" after GenCanna demanded their return following rejection.[3]  But, as to those "deposits," the

---

[2]GenCanna asserts that "[e]ven if GenCanna breached the Agreement first, LDC is not entitled to retain the full amount of the GenCanna Payments under the Kentucky UCC."  (Appellant's Br. at 35; *see also* Pl.'s Trial Br. & Witness List, Adv. Proc. ECF No. 134, at 19.)

[3]GenCanna demanded return of the "deposits" only after it rejected the Agreement under 11 U.S.C. § 365. (Trial Tr., Adv. Proc. ECF No. 156, at 11, 40.)

bankruptcy court reviewed the demand for turnover of the payments that GenCanna had made relating to the fourth dryer and second cooler in two ways. First, the bankruptcy court dismissed before trial the unjust-enrichment claim (Count II) (Mem. Op. at 10; Order, Adv. Proc. ECF No. 53). Second, the bankruptcy court gave several reasons for concluding that GenCanna was not entitled to recover the "deposits" (or Excess Payment) under Count III, including failure to prosecute the claim as well as a lack of merit.**[4]** Thus, the bankruptcy court concluded that GenCanna was not entitled to recover the "deposits" (or Excess Payment) under Count III, and as with dismissal of the unjust-enrichment claim (Count II), GenCanna has not appealed that portion of the bankruptcy court's decision.

The bankruptcy court's rulings did not exclusively favor LDC: the court also found for GenCanna by holding that LDC had not overcome the objection to its proof of claim because "the final progress payment was not yet due" under the Agreement and proposals. (*Id*. at 17.) Thus, the bankruptcy court sustained GenCanna's objection and disallowed LDC's proof of claim. LDC did not appeal that ruling on Count IV.

## DISCUSSION

GenCanna listed two issues on appeal. First, GenCanna asserts that the bankruptcy court improperly analyzed GenCanna's breach-of-contract claim as an "anticipatory breach" under Kentucky law. In the second stated issue on appeal, GenCanna asserts that the bankruptcy court erred in finding that GenCanna had not met its burden of proving that LDC breached the agreement under Kentucky law. This opinion will also address issues raised in GenCanna's briefing that were not specifically stated in the listed issues on appeal. (Statement of Issues on Appeal, Adv. Proc. 20-05032, ECF No. 155 at 2.)

---

**[4]**Additionally, regarding GenCanna's demand for turnover of the "deposits," the bankruptcy court noted that the $1,790,023 was akin to a progress payment earned by a contractor for performance under a construction contract and that GenCanna had not provided any contrary explanation for how its "project initiation payment" had been utilized by LDC. (Mem. Op. at 11-12 (citing *American States Ins. Co. v. Glover Constr. Co. Inc.* (*In re Glover Constr. Co., Inc.*), 30 B.R. 873, 874 (Bankr. W.D. Ky. 1983) (explaining that "[p]rogress payments are those funds which the owner contracts to pay periodically based upon satisfactory performance [- the] compensation enables the contractor to embark on costly and lengthy projects without himself financing the enterprise," and discussing the contractor earning a legal and enforceable right to progress payments through performance)).)

**I.** **The bankruptcy court correctly analyzed GenCanna's breach-of-contract claim as a claim for anticipatory breach under Kentucky law.**

GenCanna asserts that "[t]he Bankruptcy Court wrongly framed GenCanna's arguments regarding LDC's breach as an 'anticipatory breach' and not a repudiation[.]" (Appellant's Br. at 13.) As stated, this issue raises whether the bankruptcy court improperly *treated* GenCanna's claim as one for anticipatory breach (and not the *correctness* of the finding that LDC's conduct was not an anticipatory breach). Indeed, GenCanna expressly argues that the bankruptcy court "*wrongly framed* GenCanna's arguments regarding LDC's breach as an 'anticipatory breach' and not a repudiation." (Appellant's Br. at 21 (emphasis added).) GenCanna, however, unequivocally argued repeatedly to the bankruptcy court—and to this Panel—that the October 16 Email and December 3 Letter constituted anticipatory repudiation. To also argue that the bankruptcy court "wrongly framed GenCanna's arguments regarding LDC's breach as an 'anticipatory breach' and not a repudiation" (Appellant's Br. at 21) contradicts its arguments in the trial brief and at trial, where GenCanna likewise appeared to use the terms interchangeably.[5]

Thus, while also arguing to the contrary, GenCanna acknowledges that its breach-of-contract claim is predicated on a finding of repudiation or anticipatory breach. In any event, GenCanna's challenge to the bankruptcy court's *framing* of its breach-of-contract claim under the doctrine of anticipatory breach must fail, as anticipatory breach and repudiation are essentially equivalents.

> Anticipatory breach of contract is "an unequivocal repudiation or renunciation of an executory contract in advance of the time of performance." *Jordon v. Nickell*, 253 S.W.2d 237, 230 (Ky. 1952). Such a breach may, "at the election of the injured party, be regarded as an anticipatory breach and support an immediate action of damages without waiting for the time of performance." *Id.* The

---

[5]GenCanna argues on appeal that its only pending claim is for breach of contract, however stated. Notwithstanding GenCanna's challenge to the bankruptcy court's application of the doctrine of anticipatory repudiation, GenCanna clearly asserts just that—that LDC breached the Agreement by claiming that GenCanna was in payment default and refusing to perform under the Agreement. (Appellant's Br. at 14 "LDC breached the Agreement when it called GenCanna in payment default and refused to perform under the Agreement.") Additionally, GenCanna quotes the Kentucky Revised Statute as support: "Where the seller fails to make delivery or repudiates . . . the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid (a) 'cover' and have damages . . . as to all goods affected whether or not they have been identified to the contract; or (b) recover damages for nondelivery . . . ." (*Id.* (quoting Ky. Rev. Stat. Ann. § 355.2-711(1)).)

Restatement (Second) of Contracts § 253 states that "[w]here an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach."

"Courts determine whether anticipatory repudiation has occurred on a case-by-case basis, depending on the particular contract language involved." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 599 (6th Cir. 2004).

*Hibbett Sporting Goods, Inc. v. ML Georgetown Paris, LLC*, No. CV 5:18-524-DCR, 2019 WL 475001, at *2 (E.D. Ky. Feb. 6, 2019).

Therefore, GenCanna's challenge to the bankruptcy court's framing of the issue fails. There is no error of law. Unless GenCanna meets its burden to show that the bankruptcy court's factual conclusion on that question was clearly erroneous, the bankruptcy court's decision must be affirmed.

## II.    The bankruptcy court did not err in finding that GenCanna failed to meet its burden of proving LDC breached the Agreement under Kentucky law.

GenCanna's brief asserts three distinct arguments regarding what constituted the breach by LDC. First, it argues that the October 16 Email was a repudiation of the agreement and, thus, a breach of contract. Second, it argues that the December 3 Letter was a breach of contract. Finally, it argues that a postpetition assertion by LDC that it was ready, willing, and able to perform if GenCanna remedied a non-existent payment default was a breach of contract. The Panel has examined the bankruptcy court's findings of fact and conclusions of law as to each and finds no error.

### A.    The bankruptcy court did not err in holding that the October 16 Email was not a complete repudiation of the Agreement.

On October 16, 2019, LDC sent GenCanna an email asserting that GenCanna was in default under the Agreement. LDC proposed that it would immediately attempt to resell the remaining dryer to mitigate the damages caused by the purported continuing default. The email concluded by requesting an immediate response if GenCanna objected to the action or wished to discuss the viability of a cure period. (Stipulations, No. 32, Adv. Proc. ECF No. 124-37).

GenCanna argues that the language in the October 16 Email amounted to "a complete repudiation of the Agreement":

> [it] was a breach of the Agreement because by LDC demanding payment that was not yet due and telling GenCanna that it was offering it a chance to cure, LDC was attempting to change the terms of the Agreement and add in more favorable terms that would allow it to ignore its obligations under the Agreement to finish the final Dryer and Cooler.

(Appellant's Br. at 23.)

GenCanna cites *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("A party breaches a contract [under Ohio law] if he fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions.") in support of its argument that by sending the email that accused GenCanna of being in default and requesting payment, LDC acted in a manner contrary to the provisions of the Agreement and, thus, breached the contract. Acceptance of GenCanna's argument, however, would require a hyper-technical definition of breach, holding that any communication that suggested or asked for any alteration or deviation from a contract would be an anticipatory breach subject to immediate remedies. *Savedoff* does not stand for this proposition, nor does GenCanna provide any legal authority for such a reading.

Kentucky law offers the correct approach. "Under Kentucky law, the doctrine of anticipatory repudiation 'requires unequivocal words or conduct evidencing an intent to repudiate the contract.'" *Upton v. Ginn*, 231 S.W.3d 788, 792 (Ky. Ct. App. 2007) (quoting *Brownsboro Rd. Rest., Inc. v. Jerrico, Inc.*, 674 S.W.2d 40, 42 (Ky. Ct. App. 1984)); *see also* U.C.C. § 2-610 cmt. 1 (Unif. L. Comm'n 1977), as codified at Ky. Rev. Stat. Ann. § 355.2-610,[6] *quoted in Upton*, 231 S.W.3d at 791 ("[A]nticipatory repudiation centers upon an overt communication of intention or an action which renders performance impossible or demonstrates a clear determination not to continue with performance."). The bankruptcy court correctly applied Kentucky law. (Mem. Op. at 14 (citing *Upton*, 231 S.W.3d at 791).)

---

[6]The Kentucky legislature provided that the Official Comments of the National Conference of Commissioners on Uniform State Laws "represent the express legislative intent of the General Assembly and shall be used as a guide for interpretation of this chapter, except that if the text and the official comments conflict, the text shall control." Ky. Rev. Stat. Ann. § 355.1–103(3). There is no conflict here.

The bankruptcy court analyzed the language of the October 16 Email and the December 3 Letter, as well as the behavior of the parties in response to those communications, and held that LDC did not express "an unequivocal and clear determination by LDC to cease performance under the Agreement." (Mem. Op. at 13.) In reaching its conclusion, the bankruptcy court relied in large part on the language of the October 16 Email that specifically requested a response to the proposal. "LDC expressly asked GenCanna to respond if it had 'any objection' to the proposed private sale or 'wish[ed] to discuss the viability of a cure period.'" (*Id*. (citation to record omitted).) The bankruptcy court further noted that "[t]he record also confirms GenCanna did not treat the email as a repudiation of future performance by LDC. GenCanna's Drennen responded almost immediately to assure LDC that GenCanna was pursuing additional financing and intended to satisfy its payment obligation." (*Id*. at 14 (citing Adv. Proc. ECF No. 124-38).) The bankruptcy court also found important that Mr. Broadbent, GenCanna's general counsel at the time, "did not testify that he viewed the October 16 Email as a termination; he understood the October 16 Email as a request to discuss issues involving the final dryer and cooler." (Mem. Op. at 14.) The record supports the bankruptcy court's factual finding regarding Mr. Broadbent's interpretation. (Tr. at 50:7-17.)

The record also supports the bankruptcy court's conclusion that at the time of the October 16 Email, both parties assumed that GenCanna was in payment default. (Tr. at 30:23-25.) The parties and the bankruptcy court subsequently acknowledged that GenCanna was not actually in payment default at the time of the October 16 Email. The bankruptcy court did not err in rejecting GenCanna's assertion that the mistaken accusation regarding payment default showed LDC's unequivocal unwillingness to perform unless the terms of the contract were changed. LDC's willingness to negotiate and try to work something out with GenCanna, even when it thought, albeit incorrectly, that GenCanna was in default, is consistent with the bankruptcy court's finding that LDC had not expressed an unequivocal repudiation.

The bankruptcy court considered all the testimony and determined that the October 16 Email was a mere communication between the parties about next steps under the contract, not an unequivocal repudiation. The exhibits and trial testimony support the bankruptcy court's conclusion that LDC did not express an unequivocal intention not to perform its obligations.

GenCanna has failed to persuade the Panel that the bankruptcy court made erroneous factual findings or misapplied the law in reaching its conclusion that the October 16 Email did not repudiate the contract.

**B.     The bankruptcy court properly found that the December 3 Letter was not a repudiation of the contract.**

GenCanna also asserts that the December 3 Letter is evidence that LDC repudiated the Agreement.  (See Appellant's Br. at 11 ("There was no further attempt at resolution with LDC because LDC unequivocally, for the second time, declined to abide by the terms of the Agreement.").)  GenCanna cites Mr. Mathis's affidavit in support of summary judgment as evidence that LDC "refused to complete the remaining Dryer and Cooler unless the final payment was received." (Appellant's Br. at 11 (citing Adv. Proc. ECF No. 129-32, Pl. Trial Ex. FF ¶ 21).)

In its brief, LDC asserts that the December 3 Letter was "an attempt to address the problems caused by GenCanna's or SQN's failure to accept the [Assigned Equipment]." (Appellee's Am. Br. at 14, BAP Case No. 22-8010 ECF No. 20.)  "LDC needed to know how to proceed because LDC was still obligated to complete the final Dryer and final Cooler."  (*Id.*) LDC asserts that it "had performed work and purchased and received parts for the remaining" dryer and cooler.  (*Id.* at n.8 (citing Adv. Proc. ECF No. 104-15, T. Mathis Affidavit; Trial Tr. at 171-72).)

The bankruptcy court determined that, based on the testimony,

> the December 3 Letter was intended as a walk-away resolution of the parties' situation given the dire financial circumstances facing GenCanna.  The cessation of construction at the Mayfield Facility and lien problems were exacerbated by the destruction of GenCanna's only operating processing facility in early November.  Any manufacturer would feel insecure on these facts and look for a solution.

> The settlement offer did not refer to termination of the Agreement or the obligations thereunder.  Broadbent, the recipient of the December 3 Letter, did not testify that he viewed it as an anticipatory repudiation of the Agreement by LDC. He took no action on the letter because it simply was not one of GenCanna's more pressing problems in November and December 2019.

(Mem. Op. at 16.) The bankruptcy court also noted that "there is no evidence that LDC took any steps to sell or otherwise dispose of the unfinished dryer and cooler (or its components) after sending the December 3 Letter." (*Id*.) The bankruptcy court found that such evidence might have supported the assertion of repudiation but that the absence of such evidence supported "the conclusion that LDC only intended to propose a resolution." (*Id*.) The bankruptcy court concluded that "[t]he December 3 Letter, like the October 16 Email, had no legal effect on the parties' relationship; it was an offer of settlement by LDC that GenCanna did not accept." (*Id*.)

GenCanna asks the Panel to interpret the December 3 Letter as an unequivocal breach and not a settlement offer because it had felt "threatened" by LDC's October 16 Email and the December 3 Letter showed "no willingness to wait for performance to be due or abide by the Progress Payment Terms schedule." (Appellant's Br. at 10-11.) GenCanna also asserts that the fact that the fourth dryer and second cooler were never finished supports its assertion that LDC repudiated. GenCanna places a great deal of emphasis on the fact that no progress payments on the fourth dryer and second cooler had been missed under the terms of the Agreement. But GenCanna does not acknowledge the trial testimony that LDC had begun work on those pieces of equipment. Mr. Mathis's affidavit describing the progress made on those pieces was unrefuted. (*See* Adv. Proc. ECF No. 33-2, ¶ 19.) Importantly, the Agreement did not have specific deadlines for those pieces and specifically provided that delivery terms for the fourth dryer would be set *after* delivery of the Assigned Equipment. Simply, there was evidence that LDC had begun work on the fourth dryer and second cooler and no evidence that LDC had not made adequate progress on them before rejection by GenCanna in the bankruptcy case.

The bankruptcy court's conclusion that the December 3 Letter was not a clear repudiation was not clearly erroneous. The bankruptcy court considered the language in the December 3 Letter and saw it for what it was—an attempt at a workout given that GenCanna was in financial difficulty. LDC did not state that it would not perform unless the terms of the contract were changed, and the fact that LDC was mistaken in its assumption that GenCanna was in payment default does not make the court's conclusion erroneous. With its insistence on unequivocal expression, the doctrine of anticipatory breach leaves ample room for contracting parties to propose modifications, adjustments, and practical solutions in the face of uncertainty. *See, e.g.*,

*Upton v. Ginn*, 231 S.W.3d 788, 791 (Ky. Ct. App. 2007) (refusing to find that the buyer's demand for an adjustment of the contract price was a repudiation). Moreover, the law cannot be so rigid as to treat a contracting party's mistaken suggestion that another party breached as itself a repudiation.

When the October 16 Email was sent, LDC had completed the first three dryers and first cooler. The parties had not yet set any timetable for completion of the rest of the equipment. Under the terms of the Agreement, the parties were not obligated to set any deadlines for completion of the final dryer until after delivery of the Assigned Equipment. Accordingly, LDC had not failed to perform under the Agreement, and it was not in breach. The bankruptcy court appropriately analyzed the October 16 Email and December 3 Letter to determine if they constituted an anticipatory breach, a repudiation, or a renunciation of the executory contract. For the reasons stated above, the bankruptcy court's conclusion that there was no repudiation is affirmed.

**C.** **GenCanna did not establish that LDC's postpetition retention of deposits constituted a breach of contract.**

Finally, GenCanna asserts that a postpetition assertion by LDC that it was ready, willing, and able to perform if GenCanna remedied a non-existent payment default was a breach of contract. In this alternative "breach" claim, GenCanna also argues that "[e]ven if [it] breached the Agreement first, LDC is not entitled to retain the full amount of the GenCanna Payments under the Kentucky UCC." (Appellant's Br. at 35.) Although GenCanna raised this identical argument to the bankruptcy court in its trial brief (*compare* Appellant's Br. at 35-37 *with* Pl.'s Trial Br. & Witness List, Adv. Proc. ECF No. 134, at 19-23)[7], the bankruptcy court did not directly address it in the Memorandum Opinion. That failure, however, appears proper because under Kentucky law, the party who breaches first cannot seek damages.[8]

---

[7]LDC asserts that GenCanna raised this argument for the first time on appeal and without citing it as an issue. (Appellee's Am. Br. at 29.) LDC is incorrect that the argument is raised for the first time on appeal. GenCanna made the same argument, practically verbatim, in its Trial Brief before the bankruptcy court. (See Adv. Proc. ECF No. 134.)

[8]The Panel also notes that the bankruptcy court sustained GenCanna's objection to LDC's proof of claim (Mem. Op. at 17), which sought to recover the remaining payment that would have been due under the Agreement

GenCanna tries to couch the argument as a breach-of-contract claim by stating that even if GenCanna breached first, "LDC breached the Agreement by retaining excess payments because (i) it was only entitled to keep its anticipated profits, and (ii) LDC failed to take any efforts to mitigate." (Appellant's Br. at 37.) By this assertion, however, GenCanna conflates a breach by LDC with GenCanna's unjust-enrichment claim and its claim for turnover of the "deposits," neither of which are the subject of this appeal.

Moreover, under Kentucky law, the first party to breach cannot seek damages. *See W. Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 315 (Ky. Ct. App. 1959) ("[A] party who commits the first breach of a contract is deprived of the right to complain of a subsequent breach by the other party."); *ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.*, No. 5:16-CV-345-KKC, 2018 WL 2050134, at *4 (E.D. Ky. May 2, 2018) ("Kentucky law deprives a party who commits the first breach of a contract of the right to complain of a subsequent breach by the other party[.]") Thus, if GenCanna breached first by its postpetition rejection of the Agreement, then LDC's failure to return the "deposits" to GenCanna cannot properly be characterized as a breach of the Agreement by LDC, absent a contractual provision requiring the return.

Even if GenCanna had preserved the issue for appeal[9], if GenCanna's argument can be understood to challenge whether LDC incurred actual damages for GenCanna's postpetition breach that were less than the Excess Payment retained by LDC, GenCanna failed to present

---

for the fourth dryer and second cooler. LDC conceded in its closing argument before the bankruptcy court that it could not show that it was entitled to the remaining payment even assuming that GenCanna's postpetition rejection of the Agreement constituted a breach. This finding, however, concerns LDC's failure to meet its burden of showing that it was entitled to recover the remainder of the contract price as requested in its proof of claim. Thus, aside from the 11 U.S.C. § 542 claim and the unjust-enrichment claim, GenCanna raised no claim for a determination of LDC's damages from GenCanna's breach.

[9]This "refund" argument does not directly flow from the issues stated on appeal. Those issues both relate to whether LDC breached the Agreement and the bankruptcy court's legal analysis of that question. GenCanna did not raise in the statement of issues on appeal the question of whether LDC must refund part or all of the Excess Payment even if GenCanna breached the Agreement. Accordingly, the bankruptcy court's prior dismissal of Count II, which alleged unjust enrichment, was not appealed. Further, neither GenCanna's brief nor its reply mention § 542, and the amount sought is different from the amount sought in Count III. (*Compare* Compl., Adv. Proc. ECF No. 1, at ¶ 53 ($1,790,023), *with* Appellant's Br. at 36, 37 ($1,014,051).) Based on the foregoing, the Panel concludes that the "refund" argument in GenCanna's brief does not arise from an appeal of the dismissal of Count III; however, to the extent that it does, the argument has been waived. *See In re Murray Energy Holdings Co.*, 640 B.R. 558, 565 (B.A.P. 6th Cir. 2022) ("Issues that are not properly developed are waived on appeal." (citations omitted)).

evidence at trial from which the bankruptcy court could determine whether the Excess Payment exceeded actual damages that LDC might have been allowed to retain under the UCC. (*See* Mem. Op. at 13 n.7.) As the bankruptcy court properly stated, "LDC made no effort at trial to establish its damages in accordance with the Uniform Commercial Code" (Mem. Op. at 17); nor did GenCanna present evidence from which the bankruptcy court could have awarded GenCanna a refund under the UCC. (*See id.* at 13 n.7.)

**III.    GenCanna has failed to prove that it is entitled to any refund of the amount paid to LDC.**

Finally, in another attempt to recover what it perceives as a "windfall"[10] (Appellant's Br. at 34) retained by LDC, GenCanna argues that it is entitled to damages because LDC never finished the equipment. (*Id.* at 32*.*) GenCanna argues that LDC received $5,390,023 of the total $6,035,854 purchase price but that it only delivered $4,375,972 worth of equipment (i.e., the value of the Assigned Equipment). "Therefore, LDC retained $1,014,051 . . . that GenCanna paid towards the final Dryer and Cooler, which LDC never finished or delivered." (*Id.*) In its Trial Brief, GenCanna asserted that the amount retained by LDC "is well beyond the rejection damages that would be supported by the written agreement and the [UCC]." (Adv. Proc. ECF No. 134 at 2.) It makes the same argument here.

> Kentucky law is well settled that GenCanna is entitled to recover damages for breach of contract in this situation. If a seller fails to make delivery or repudiates an agreement, the buyer may cancel and recover the price it has paid towards the goods in question. *See* KRS § 355.2-711(1); *Emerald Int'l Corp. v. WWMV, LLC*, No. CIV.A. 14-109-DLB-JG, 2014 WL 7358846, at *9 (E.D. Ky. Dec. 23, 2014); *Princesse D'Isenbourg Et Cie Ltd. v. Kinder Caviar, Inc.*, No. CIV.A. 3:09-29-DCR, 2011 WL 720194, at *6 (E.D. Ky. Feb. 22, 2011).

(Appellant's Br. at 32.)

GenCanna has failed to articulate any principled basis on which the bankruptcy court, or this Panel, could require LDC to refund any payments received under the Agreement. GenCanna has failed to persuade the Panel how any refund request at this point differs from its unjust-

---

[10]Although this argument also appears to be an attempt to couch the dismissed unjust-enrichment claim that was not appealed as a claim for breach of contract, because the Statement of Issues included the issue of breach, the Panel will address the argument.

enrichment claim, which the bankruptcy court dismissed pre-trial over GenCanna's objection under Rule 56, a ruling that GenCanna did not appeal.

Most fundamentally, under the laws of Kentucky (and elsewhere), "unjust enrichment is unavailable when the terms of an express contract control." *Furlong Dev. Co., LLC v. Georgetown-Scott Cnty. Plan. & Zoning Comm'n*, 504 S.W.3d 34, 40 (Ky. 2016). Here, the Agreement clearly governs the parties' relationship, as GenCanna asserted when it sought to reject it as an "executory contract" under 11 U.S.C. § 365 and when it articulated its arguments on appeal. This precludes GenCanna's insistence on a refund that is grounded, one way or another, on unjust enrichment.

To the extent GenCanna seeks to support its refund claim by citing Kentucky contract law, the Panel's finding that the bankruptcy court did not err in its conclusion that LDC did not breach the Agreement, coupled with GenCanna's breach that occurred by operation of law on rejection under 11 U.S.C. § 365, preclude GenCanna, as the party who first breached, from seeking damages under the Agreement. *See W. Ky. Coal Co. v. Nourse*, 320 S.W.2d 311, 315 (Ky. Ct. App. 1959); *ClubSpecialists Int'l, LLC v. Keeneland Ass'n, Inc.*, No. 5:16-CV-345-KKC, 2018 WL 2050134, at *4 (E.D. Ky. May 2, 2018).

## CONCLUSION

After considering the testimony of witnesses, the stipulations of the parties, and the evidence presented, the bankruptcy court reached its conclusion that LDC did not repudiate the Agreement. The court also concluded that GenCanna was the first party to breach the Agreement by rejecting it under 11 U.S.C. § 365. Under Kentucky law, as the first breaching party, GenCanna cannot recover contract damages. Further, GenCanna has not established that the bankruptcy court relied on clearly erroneous factual findings or that it misapplied the law. Accordingly, the bankruptcy court's judgment is AFFIRMED.